IN RE SHAVOUGHN K. ET AL.*
(5205)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued September 29—decision released December 22, 1987

*Margaret P. Levy,* for the appellant (respondent mother).

*Patricia Lilly Harleston,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert G. Garvey,* assistant attorney general, for the appellee (petitioner).

*William L. Ankerman,* for the minor children.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Norcott, J. This case involves an appeal from the granting of three separate petitions for the termination of the respondent mother's parental rights brought pursuant to General Statutes § 17-43a by the commissioner of the department of children and youth services (DCYS). The respondent mother claims that the trial court erred in concluding (1) that she had abandoned her youngest child, Shavoughn, (2) that she had failed to rehabilitate herself with respect to all three children, and (3) that the termination of her parental rights was in the best interests of the two older children, Lekila F. and Shante K. We find no error.

The respondent moved to Connecticut as a young child and, except for a brief period of residence in New York, she has remained in this state. She has never been able to secure a permanent address in her own name. Her living arrangements have always been at the convenience or charity of family and friends. She has been repeatedly arrested and after reaching the age of sixteen years has been in and out of our state correctional institutions during much of her adulthood. The respondent also has a history of substance abuse. As of the date of the hearings on the petitions she had given birth out of wedlock to five children, the three youngest of whom are the subjects of this appeal, and before the completion of the dispositional hearings she was pregnant with a sixth child.

DCYS first became involved with this family in June, 1983, when the respondent was arrested for repeated failures to appear in connection with pending larceny charges. The first action taken by DCYS was to place all five children in state licensed foster homes. Two months later, DCYS filed petitions alleging that the respondent's children were uncared-for and neglected. On March 24, 1984, upon the respondent's admission that she was unable to provide them with a home during her incarceration, the children were adjudged to

be uncared-for in the sense of being homeless, but no findings were made on the allegations of neglect. Disposition of the matter was deferred until the respondent was released from Niantic Correctional Center where she had been incarcerated.

The dispositional hearing was held on August 1, 1984, after the respondent had been transferred to the Watkinson Halfway House in Hartford. At the dispositional hearing, the respondent agreed to the commitment of all five of her children with the expectation that they would be returned to her should she meet certain expectations or preconditions set by the court for their return. These conditions were (1) that she follow the requirements of her probation, (2) that she secure adequate housing, (3) that she engage in counseling, (4) that she apply for city welfare or otherwise secure an income for herself, and (5) that she visit the children regularly. Subsequent to her release from the halfway house, the respondent moved in with her sister on a temporary basis.

Two months after the initial commitment the respondent had attended only one of four scheduled counseling sessions; none of the other conditions had been met. Nonetheless, in October of 1984, the two oldest children, who are not subjects of this appeal, were returned to the respondent with the understanding that Lekila, age three years at the time, could conditionally begin overnight stays. The record reveals that the respondent had no contact with either Shante, age two, or Shavoughn, age one, during this period.

The respondent finally filed for AFDC, pursuant to the conditions set forth by the court, a few months after the court's order of August 2, 1984. Her application had not been acted upon by January, 1985, however, when the respondent was forced to leave her sister's home after an altercation. Without any financial sup-

port for housing from any source, the respondent left the two older children in the care of her sister who had been approved by DCYS as a foster parent. DCYS again urged the respondent to engage in counselling, specifically with respect to the follow-through needed to secure housing and resources required for the return of her children.

DCYS then lost contact with the respondent for some period of time. When it reestablished contact, the respondent was living in the apartment of an unrelated older man. As this living arrangement was by the respondent's own assessment inappropriate for the children, she did not attempt to regain custody at this time. She continued to visit Lekila on an infrequent basis, but had no contact with Shavoughn or Shante.

In July of 1985, the respondent was returned to Niantic for a violation of probation. During this incarceration, DCYS began to develop long term planning services for the two youngest children. Shavoughn, Shante and Lekila were residing with foster parents at this time. Upon the respondent's release from prison she returned to live with the older gentleman.

During the year preceding the filing of the termination petitions, the history of the respondent's contact with the three children who are the subject of this appeal varied as to each child. The respondent visited the baby, Shavoughn, only once during this period even though she lived within walking distance of Shavoughn's foster home. This was true even though no limitations or restrictions were ever placed on visitations or phone calls. Her explanation was that visitation was too emotional an experience.

With respect to Shante, the respondent's situation was somewhat different. Shante's foster mother disallowed visits at her home and she had an unlisted phone number. Additionally, the record reflects that,

unbeknowst to DCYS, Shante's foster mother moved to a different address. Faced with these obstacles, the respondent was instructed to arrange visitations through DCYS. The respondent, however, did not request visitations with Shante during this period. With regard to Lekila, the record reveals that the respondent did occasionally visit, but overall her contact with the child was minimal.

It is clear from the record that during the entire period of the childrens' DCYS commitment the respondent engaged in infrequent counseling. By her own testimony, she felt that counseling was particularly ineffective, and expert evidence revealed doubt that the mother's problems could significantly improve with counseling. This same evidence showed clearly that the prognosis for the respondent's success as a responsible parent suited to handle the needs of her children would be negative without counseling.

On October 7, 1985, DCYS filed the petitions for termination of parental rights that are the subject of this appeal. Each petition alleged that the respondent's parental rights should be terminated pursuant to General Statutes § 17-43a (a). On May 7, 1986, at the first dispositional hearing on these petitions, the trial court found that the petitioner had proven by clear and convincing evidence that the respondent had abandoned the youngest child, Shavoughn. In reaching its decision, the court relied on the expert testimony of a clinical psychologist who testified that because of the very young age of Shavoughn, the child's inability to relate to or recognize the respondent as his biological or psychological parent, and the respondent's failure to maintain even minimal contact with the child, no parent-child relationship existed between the respondent and Shavoughn.

The court also found that the petitioner had sustained its burden of proving that the respondent had failed to rehabilitate herself within the meaning of General Statutes § 17-43a as to all three children. With respect to the two girls, Lekila and Shante, the court deferred final action for a three month period to determine whether it would be in the best interests of the two girls to terminate the respondent's parental rights. The court concluded, however, that it would be in the best interests of Shavoughn to terminate the respondent's parental rights immediately. Accordingly, the petitions for termination were granted as to Shavoughn at that time.

At the second dispositional hearing on October 7, 1986, the trial court finally concluded that the mother's situation had remained basically unchanged, and it terminated her parental rights to Lekila and Shante also.

I

The respondent's first claim is that the trial court erred in concluding that she abandoned her youngest child, Shavoughn. We do not agree.

"The termination of parental rights is defined as 'the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and parent. . . .' [General Statutes § 17-32d (e) (formerly § 45-61b(g))]." *In re Juvenile Appeal (Anonymous),* 181 Conn. 638, 640, 436 A.2d 290 (1980). It is "the ultimate interference by the state with the natural rights of parents in their children, resulting in an everlasting severance of the legal relationship, and usually the separation of parent and child as well . . . ." *In re Migdalia M.,* 6 Conn. App. 194, 203, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). Accordingly, our legislature has provided by statute that parental rights are not to be terminated except upon clear and convincing evidence that (1) ter-

mination is in the best interest of the child, and (2) one or more of the statutory grounds for termination exists. General Statutes § 17-43a (b). Strict adherence to the statutory criteria is required. *In re Migdalia M.*, supra.

One of the statutory grounds for termination set forth in General Statutes § 17-43a (b) is abandonment of the child. As we noted in *In re Migdalia M.*, supra, "a petition for termination of parental rights may be granted if the court finds 'upon clear and convincing evidence,' that a parent has 'abandoned the child in the sense that [the parent has] failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare.' [General Statutes§ 17-43a (b) (1).] Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of 'interest, concern or responsibility' for the welfare of a child. *In re Luke G.*, 40 Conn. Sup. 316, 323 A.2d 1054 (1985). Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred. *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 438 A.2d 801 (1981)." *In re Migdalia M.*, supra, 208–209.

The record in this case clearly supports the trial court's decision that statutory abandonment has occurred with respect to Shavoughn. Shavoughn was taken from the respondent when he was only three weeks old. In the fourteen months that followed, the respondent made only two visits and two telephone calls to Shavoughn's foster home. This was true even though the foster home was within easy walking distance of where the respondent was staying and the respondent was free to telephone or arrange visits directly, without going through DCYS. The respondent fails to point to any evidence that controverts the trial court's finding, based on these facts, that she failed to display any

"interest, concern or responsibility" for the welfare of Shavoughn. Accordingly, we find that the trial court's decision is legally correct and factually supported. *In re James T.,* 9 Conn. App. 608, 617, 520 A.2d 644 (1987).

## II

The respondent's second claim is that the trial court erred in concluding that she had failed to rehabilitate herself.[1] We do not agree.

General Statutes § 17-43a (b) (2) allows the trial court to terminate parental rights when the parent has "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of a child, [she] could assume a responsible position in the life of the child." In determining whether the parent has failed to rehabilitate herself to the extent that she could assume a responsible role in her children's lives, the court must consider the six factors listed in General Statutes § 17-43a (d); see *In re Rayna M.,* 13 Conn. App. 23, 31–32, 534 A.2d 897 (1987). Those factors are: "(1) [t]he timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or

---

[1] The respondent asserts this claim for all three of her children. We review it, however, only as it affects the termination of her rights to Lekila and Shante. We have long held that in order to satisfy the statutory requirements for elimination of parental rights, DCYS need only prove by clear and convincing evidence one of the statutory grounds provided in General Statutes § 17-43a (b). *In re Juvenile Appeal (84-BC),* 194 Conn. 252, 258, 478 A.2d 1204 (1984); *In re Migdalia M.,* 6 Conn. App. 194, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). Our holding that abandonment was properly proven as ground for termination of the respondent's parental rights to Shavoughn precludes our review of this alternate claim of error as it affects Shavoughn.

agency and the parent, and the extent to which all par-
ties have fulfilled their obligations under such order;
(3) the feelings and emotional ties of the child with
respect to his parents, any guardian of his person and
any person who has exercised physical care, custody
or control of the child for at least one year and with
whom the child has developed significant emotional ties;
(4) the age of the child; (5) the efforts the parent has
made to adjust his circumstances, conduct, or condi-
tions to make it in the best interest of the child to return
him to his home in the foreseeable future, including,
but not limited to, (A) the extent to which the parent
has maintained contact with the child as part of an
effort to reunite the child with the parent, provided the
court may give weight to incidental visitations, com-
munications or contributions and (B) the maintenance
of regular contact or communication with the guard-
ian or other custodian of the child; and (6) the extent
to which a parent has been prevented from maintaining
a meaningful relationship with the child by the unrea-
sonable act or conduct of the other parent of the child,
or the unreasonable act of any other person or by the
economic circumstances of the parent." General Stat-
utes § 17-43a (d).

In this case, the respondent failed to do anything
which would encourage the belief that she could ever
assume a responsible position in her children's lives.
The trial court offered her counseling services, but the
respondent exhibited a complete disdain for counsel-
ing, attending only one of the several scheduled ses-
sions.[2] Furthermore, while no court orders were ever

----

[2] The respondent claims that the trial court erred in using her failure to
attend counseling sessions as a basis for terminating her parental rights.
She claims that because of certain personality disorders counseling would
be totally ineffective for her. She argues that requiring her to attend coun-
seling is a violation of her rights to due process of the law and equal pro-
tection of the laws as guaranteed by both the state and federal constitutions
because it is in essence asking her to do something she cannot do because

issued in this case, the trial court repeatedly spelled out the expectations the respondent was expected to fulfill in order to resume care of the children: Avoid problems with the criminal courts; secure adequate housing; and visit the children regularly. The respondent was unable to meet the first two expectations and achieved only token compliance with the last. We find nothing in the record to support the respondent's contention that she had become a parent capable of assuming a responsible position in her children's lives.

## III

The final claim raised by the respondent is that the trial court erred in concluding that termination of her parental rights with respect to Lekila and Shante was in the best interest of the children. Again, we do not agree.

The record reveals that the children have lived in foster homes for more than half their lives. They have seldom seen their natural mother and have developed no real ties to her. Given these facts and the fact that the respondent has shown neither the inclination nor the ability to be a responsible parent, we uphold the trial court's finding that termination was in the best interests of the children. *In re Juvenile Appeal (Anonymous)* 181 Conn. 638, 646, 436 A.2d 290 (1980).

There is no error.

In this opinion the other judges concurred.

---

of her mental status. We note first, that this argument was never raised in the trial court. We note also that on appeal the defendant makes no more than a bare assertion of her constitutional rights. She provides absolutely no authority supporting her argument. Accordingly, we refuse to consider her claim at this time. *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 249–50 n.3, 524 A.2d 610 (1987).