[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
NATURE AND HISTORY OF PROCEEDINGS
This is the case of Tasharian H. who is the subject of a petition to terminate the parental rights of Linda B., her mother, and Lamont D., her father.
Tasharian, who was born on August 22, 1987, was adjudicated to be a neglected child on July 7, 1988 and thereafter, on September 8, 1988, was committed to the Department of Children and Youth Services ("DCYS") for a period not to exceed 18 months. The commitment was extended by the court for an additional 18 months on January 23, 1990. CT Page 3142
On March 5, 1990 DCYS filed a petition seeking to terminate the rights of both mother and father alleging as grounds: (1) abandonment by both parents, (2) no ongoing parent-child relationship by the father, (3) failure to rehabilitate by the mother, (4) acts or omission by the mother. In addition, a waiver of the one year requirement was requested as to the ground of abandonment by mother.
A trial was begun on August 31, 1990. The mother, although notified, did not appear on the first day of trial. She was, however, represented by counsel. The trial was continued to and concluded on September 21, 1990. Mother was present on the September 21st date. Father has never appeared at any of these proceedings and his whereabouts is unknown.
FACTS:
Evidence offered at trial, interpreted in the light of the prior record in this court concerning this child of which the court has taken judicial notice, permits the finding of the following facts:
Tasharian, who was born to Linda B. and Lamont D. on August 22, 1987, became the subject of concern by DCYS very soon after her birth. On October 8, 1987 mother contacted DCYS and requested that the child be placed in foster care as mother's apartment did not have utilities and she was unable to properly care for the infant. The child remained in foster care with Betty R., a licensed foster mother, until November 7, 1987.
On January 13, 1988 Linda again contacted DCYS and requested that Tasharian be placed in foster care because mother believed that she was about to be incarcerated on criminal charges. As a result, on January 14, 1988, Tasharian was again placed in foster care. Mother was not actually incarcerated until April 18, 1988; yet, she did not ask to have her daughter returned to her, and she only visited with the child four times during those three months prior to her incarceration. Mother was released from the correctional institution on May 13, 1988.
On May 4, 1988 DCYS filed a neglect petition on behalf of Tasharian. The petition alleged, in part, that the child was being denied proper care and attention in that mother had not visited the child on a regular basis since placing her in foster care. Tasharian was adjudicated neglected on July 7, 1988.
A service agreement was entered into between mother and DCYS on July 7, 1988, and was subsequently made an expectation of the court. The main thrust of the agreement was that mother would visit with Tasharian on a regular basis. Mother visited with Tasharian only once between May 28, 1988 and September 8, 1988, the date the child was committed to DCYS. CT Page 3143
From September, 1988 until June, 1989 DCYS worked with mother in an effort to reunite this family. Initially, the agency had difficulty keeping in touch with mother and she was inconsistent in visiting with Tasharian. However, the situation improved beginning in April, 1989, and in June, 1989, when the foster mother became ill and was unable to care for Tasharian, it was felt that mother had made sufficient progress to warrant a reunification. Thus after approximately 17 months of continuous placement in foster care, Tasharian was reunited with her mother on June 6, 1989.
Initially things went well, even though mother did not have a permanent residence. Mother and child were living in shelters and in motel rooms. In October, 1989 the manager of a motel at which mother and child were living called the police after observing Tasharian unattended outside of her motel room for approximately one half hour between approximately 10:00 and 10:30 p.m. Mother was located by the police in another room of the motel. When questioned about this incident by the DCYS worker, mother denied leaving the child alone outside. She said she left the child alone in the room when she went out to look for some lost keys. (Social study of March 5, 1990)
On November 1, 1989 mother was requested to leave the motel because of her disruptive behavior. Mother and child were relocated to another motel.
At approximately 2:00 a.m. on November 5. 1989, police officers, acting upon a complaint, found Tasharian alone in a locked motel room. Mother was subsequently arrested for Risk of Injury to a Minor Child and Tasharian was once again removed from mother's custody and placed back in foster care, where she remains.
Mother admitted to DCYS supervisor Karl Kemper on November 5, 1989 that she had a drug problem and agreed to attend substance abuse counseling. She has failed to do so as of the date of trial.
Mother's visits with Tasharian and contacts with DCYS subsequent to the child's re-placement in foster care on November 5, 1989 have been sporadic, at best. She visited with Tasharian on November 17, 1989 but then had no contact with DCYS until December 19th. Tasharian was to have a home visit with mother on January 5, 1990, but mother was not at home for the visit. Mother contacted DCYS on February 8, 1990 to request a home visit with Tasharian; however, when the DCYS worker went to mother's residence on February 9, 1990 she would not let the worker in the home claiming that it was in disarray. Between November 5, 1989 and March 5, 1990 there were approximately six contacts between mother and DCYS, and only one visit between mother and Tasharian.
On March 5, 1990 mother entered into a new service agreement with DCYS in which she agreed to have bi-weekly visits with Tasharian and secure substance abuse treatment. (Petitioner's exhibit #1). DCYS social CT Page 3144 worker Parkinson went over the service agreement with mother, item by item. Mother did not comply with any of the terms of the agreement. Since entering into the service agreement of March 5, 1990 mother has had approximately five visits with the child, one of which was during a court ordered evaluation with Dr. Meier.
In May, 1990 a new social worker, Theresa Bohara, was assigned to the case. Ms. Bohara testified that she arranged for visits between mother and child in May but there have been no visits and very limited contact between mother and DCYS since then.
Ms. Bohara testified that there was little interaction between mother and child during the three visits she observed in May. Mother seemed to want to simply complete the visits and would ask, "How long should these visits last?"
The foster mother of the child also testified that there have been very few visits between mother and child since November 5, 1989. Tasharian calls the foster mother "mom" and acts like the other four children in her home. The foster mother stated that she observed a good reaction between mother and child during their visits. The child looks forward to visits with mother and "Linda loves the child very much." She testified that the child was very healthy and clean when she was placed back in foster care in November, 1989.
The foster mother told Linda several times that she could call to ask about the child but she had only called once since November 5th.
On May 25, 1990 Linda was arrested by New London police officers on a charge of Possession of Cocaine with Intent to Sell. She was found to be in possession of two vials of crack cocaine. She admitted to police that she had been using cocaine and stated that she had used cocaine the night before her arrest. The parties in the instant case have stipulated that Linda has pleaded guilty to a reduced charge of Possession of Cocaine and that she was awaiting sentencing at the time of trial. (Petitioner's Exhibit #4).
The child's father has had no contact with Tasharian or DCYS since 1988. His whereabouts is unknown.
CLINICAL EVALUATIONS
Dr. Robert Meier, a licensed clinical psychologist, has conducted two court ordered psychological evaluations of mother and child.
The first evaluation took place in December, 1988 at which time Linda denied any problem with drugs or alcohol, even though Dr. Meier was aware that Linda had been arrested for possession of drugs. He found that Linda showed little knowledge or awareness of Tasharian's needs or development at that time. He considered her to be at high risk for continued substance CT Page 3145 abuse and found her relationship with Tasharian to be ". . . warn but not overly affectionate. The child seemed to be independent and demonstrated no strong attachment to mother during the evaluation".
Dr. Meier recommended that mother be given a limited time of approximately six months to establish an adequate home for Tasharian and become involved in parenting training. He also recommended that the receive substance abuse counseling and treatment. (Petitioner's Exhibit #2). The following comments contained in Dr. Meier's 1988 report are reproduced for emphasis:
 Linda [B.] is not prepared to take on the responsibilities for the care of this child at the present time. She shows limited awareness of the child's needs and current level of functioning. She has done little to provide a suitable home, has continued to engage in inappropriate behaviors, and has continued to have problems with the law.
 Unless there is a strong commitment to change her lifestyle and behavior patterns, significant improvement in the near future is unlikely.
Dr. Meier conducted a second clinical evaluation of Linda and Tasharian on May 31 and June 20, 1990 at which time mother admitted that she had been using drugs before Tasharian was returned to her in June, 1989 and after DCYS removed the child in November, 1989. Although she claimed to have stopped using drugs since January, 1990, she acknowledged the fact that she was arrested for possessing cocaine in May, 1990. She minimized that incident claiming that it was not important because she was arrested with only a small amount of cocaine. She claimed that she was looking into a drug program but had received no counseling or treatment for substance abuse up to that time. (Petitioner's Exhibit #3).
Dr. Meier testified that despite not having seen the child for several weeks mother did not interact freely with Tasharian or did she show much affection toward the child during the evaluation of June, 1990.
The following portions of Dr. Meier's findings and opinions of his June, 1990 report are reproduced for emphasis:
 Linda denies serious problems, and tends to blame others for her difficulties. Her major defenses are rationalization and projection. This type of pattern tends to be chronic, and fits the diagnosis of personality disorder. Such individuals rarely seek help for themselves voluntarily. Linda shows no strong commitment to treatment or therapy despite the fact she may possible lose her daughter. She has been aware of her responsibilities and is aware she has not followed through on her agreements with DCYS.
It is unlikely mother will be able to provide a suitable home within the CT Page 3146 next one to two years. Since the child has been in and out of placement for over two years, a permanent placement in the near future is recommended.
 The child recognizes mother, but it is unlikely that mother is viewed as the psychological parent.
 [Mother] would need to complete a drug treatment program, engage in personal counseling, establish a suitable life style which would not expose the child to drug abuse or illegal behavior, and demonstrate a consistent pattern of increased responsibility. Given the fact she is facing further incarceration, and has not engaged in drug treatment, the prognosis for such change in the foreseeable future is poor. The child has been in foster care for a significant part of her life, and the extension of such placement for an extended period of time could be harmful to the child.
 The Court finds Dr. Meier's reports and testimony to be credible and affords them considerable weight.
ADJUDICATION: as of March 5, 1990 — the date the petition was filed.
ABANDONMENT:
The Connecticut General Statutes sections 17-43a(b)(1) defines abandonment as the parent's failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."
 "Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child and no concern for the child's welfare, statutory abandonment has occurred." In Re Rayna N., 13 Conn. App. 23, 36 (1987).
FATHER:
The Court finds from the weight and sufficiency of the evidence, clear and convincing proof that father, who has had no contact at all with Tasharian for the past two years, and who has neither expressed nor manifested any interest, concern or responsibility as to the welfare of this child during that period of time, has abandoned Tasharian as defined by statute.
MOTHER:
This child had one visit from her mother during the latest four months of placement in foster care from November 5, 1989 until March 5, 1990, the date the termination petition was filed. The evidence indicates that she may have made one telephone call to the foster mother during this period of time. (Emphasis added). Additionally, she has had very limited contact with DCYS during these four months and has not been cooperative with that CT Page 3147 agency with respect to scheduling or keeping visits with Tasharian or in addressing her own substance abuse problems. Her interest in and concern for the child's welfare during this period of time have been negligible.
What is equally disturbing is that this pattern of behavior is not only a re-occurrence of mother's lack of interest and concern manifested prior and immediately subsequent to the adjudication of neglect in July 1988, but it comes after the child has been reunited with mother for a period of five months. While mother may love her daughter, she is not expressing any of the care and concern a loving caring mother would or should have for her two year old child. It does not appear that her behavior is likely to change in the near future.
It is clear that Linda has not maintained a reasonable degree of interest, concern or responsibility in Tasharian since her placement in January, 1988. At best her interest, concern and responsibility have been sporadic with months of little or no contact with the child. The fact that the child was placed with mother for a five month period of time is significant only to the extent that it demonstrated mother's lack of commitment to properly care for the child.
"General Statutes Sect. 17-43a(b)(1) does not contemplate a sporadic showing of `interest, concern or responsibility for the welfare of a child.' A parent must maintain a reasonable degree of interest in the welfare of his or her child." In re Rayna M., Supra at 33-38. "Maintain implies a continuing, reasonable degree of concern." In re Migdalia M.,6 Conn. App. 194, 210 (1986).
The court finds clear and convincing evidence that mother has abandoned Tasharian in the statutory sense in that she has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
While arguably the situation which gave rise to the finding of mother's abandonment may not have been in effect for more that one year, given the totality of the circumstances of the case, the total length of time the child has been in foster care, mother's lack of rehabilitation, and the realistic prediction that she is not likely to change her behavior within the foreseeable future, a waiver of the one year requirement is warranted and is granted.
NO ONGOING PARENT-CHILD RELATIONSHIP:
Section 17-43a of the Connecticut General Statutes defines this ground as the absence of an:
". . . ongoing parent-child relationship which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or re-establishment CT Page 3148 of such parent-child relationship would be detrimental to the best interest of the child."
FATHER:
The court finds that the evidence is clear and convincing that there is no parent-child relationship in existence between father and Tasharian as father has abandoned the child and has not seen her for over two years. Tasharian is only three years old and it is therefore unlikely that she has any memory of her father. The situation has obviously existed for more that one year.
Even though no parent-child relationship exists, that alone is not grounds to terminate a parent's rights. The court must also find by clear and convincing proof that to permit further time to establish such relationship would be detrimental to the best interest of the child.
In this case it would be unreasonable for a three year old child, who needs permanency and stability in her life, to be required to wait any longer to determine whether her father, who has had no contact or relationship with the child for years, and whose whereabouts is unknown, will make a meaningful appearance in her life. The Court therefore finds by clear and convincing proof that to permit further time to establish a relationship between father and child would be detrimental to the best interest of the child.
FAILURE TO REHABILITATE:
Section 17-43a(b)(2) of the General Statutes provides for the termination of parental rights in the situation where a parent of a child who has previously been adjudicated as being neglected fails to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time said parent could assume a responsible position in the life of the child, considering the age and the needs of said child. The court finds clear and convincing evidence that Linda has not achieved such degree of personal rehabilitation.
One of the grounds upon which Tasharian was adjudicated to be a neglected child on July 7, 1988 was mother's failure to visit with the child while she was placed in foster care. That same pattern of behavior continued after the child was adjudicated, and again after Tasharian was re-placed in foster care subsequent to her removed from mother's care on November 5, 1989.
Even during the five months from June 1989 until November, 1989, when Linda had her daughter in her care, the situation was clearly less than desirable. Mother did not maintain a stable home environment for herself or the child and she left her two year old child alone and without supervision on at least two occasions. Finally, mother has not addressed her drug problem as she promised to do. CT Page 3149
Dr. Meier pointed out during his December, 1988 evaluation of mother that she was a high risk for continued substance abuse and that she needed a strong commitment to changing her life style so as to be able to assume a responsible position in the life of her child. She has not made that commitment nor has she changed her style of living.
Mother's continuing failure to enter substance abuse treatment and her lack of commitment to Tasharian, which has continued for most of the child's life, are clear and convincing evidence of mother's failure to achieve an acceptable level of personal rehabilitation. Given her lack of change over the past two years, and considering Dr. Meier's evaluation, it is unreasonable to expect any significant changes in her behavior in the reasonably foreseeable future.
At the time the termination petition was filed Tasharian was approximately thirty months old and had been placed in foster care on three separate occasions for a total of approximately 22 of those months. This child need a permanent, secure and nurturing environment in which to grow and develop. She has already been in placement too long.
Pursuant to In Re Shavoughn K., 13 Conn. App. 91, 98 (1987), the court's required findings as to the six factors listed in Sec. 17-43-a(d), as of March 5, 1990 when the petition was filed, are as follows:
 (1) DCYS entered into a service agreement with Linda subsequent to the adjudication of neglect in July 1989. A visitation schedule was put into effect at that time. Additionally, efforts were also made by DCYS to provide visitation subsequent to the last placement in November, 1989. Mother was encouraged to enter a substance abuse program but chose not to do so. DCYS also provided housing assistance to mother during the four months Tasharian was with her in 1989.
 (2) The service agreement of July 7, 1988 was made into an expectation of the court. Mother failed to comply with the terms of that agreement.
 (3) Tasharian appears to have emotional ties with her foster mother, whom she calls mom. Dr. Meier found no strong attachment of Tasharian to Linda.
 (4) The child was approximately two and one half years of age at the time the petition was filed.
 (5) Mother has had only one visit with her daughter since the latest placement on November 5, 1989. She has had only six contacts with DCYS and perhaps only one with the foster mother since that date. This is the same pattern that she exhibited during most of Tasharian's foster placement in 1988 and 1989. Mother has not entered into the substance abuse treatment which she so badly needs. In short, she has made no significant efforts at all to change her conduct, circumstances or CT Page 3150 conditions to make it in the best interest of this child to be returned to her care, and she is unlikely to do so in the foreseeable future.
 (6) Mother was not prevented from maintaining contact with her daughter by anyone. While her financial situation was far from ideal, it was not a factor in her relationship with Tasharian.
With respect to this ground for termination, the court finds, by clear and convincing evidence, that at the time the petition was filed Linda had not achieved a degree of personal rehabilitation as would encourage a belief that she could assume a responsible position in this child's life, within a reasonable period of time, given the child's age and length of time she has been in foster care.
ACTS OF OMISSION OR COMMISSION:
In order to terminate mother's parental rights on this ground the evidence must clearly and convincingly prove that the child was denied the care, guidance or control necessary for her physical, educational, moral or emotional well-being as the result of an act or acts of commission or omission by her mother. "The evil to be avoided is any conduct on the part of the parent that would deny the child in question the care, guidance or control that would foster his well-being." State v. Anonymous,179 Conn. 155, 164 (1979).
When considering whether the petitioner has met her burden of proof the court engages in a two step process. First the court determines whether the child has been denied by reasons of acts of parental commission or omission the care, guidance and control necessary for his physical, educational, moral, or emotional well-being. If such conditions exist, the court next determines whether the parental acts or deficiencies support the conclusion that the parent cannot exercise or should not, in the best interest of the child, be permitted to exercise parental rights and duties. In re Juvenile Appeal (84-AB), 192 Conn. 254, 262 (1984); In re Juvenile Appeal (85-3), 3 Conn. App. 194, 200 (1985). Both steps must be proven by clear and convincing evidence. (Id. at 267).
As to the first step of the process, the Court finds that the act of leaving a two year old child alone at night in a motel on two occasions in October and in November, 1989 is clear and convincing evidence of deprivation of the physical care necessary for the well-being of the child.
As to the second step, the Court has found that mother has abandoned her child, as defined by statute, and that she has failed to achieve such level of personal rehabilitation so as to reasonably be able to expect that she will be able to have a meaningful and responsible role in her daughter's life in the reasonable foreseeable future. She has done nothing of significance to change her lifestyle or patterns of behavior and there is no indication that she will initiate such changes in the future. CT Page 3151 For all of these reasons the court finds it to have been clearly and convincingly proven that mother should not, in the best interest of the child, be permitted to exercise parental rights and duties.
It would be illogical to require that acts of commission or omission, which have the effect of depriving a child of necessary care, exist for a period of 12 months before a petition to terminate parental rights could be filed. The child can not be expected to suffer such deprivation and/or harm for any length of time, much less over the course of a year. Consequently, the Court finds that the one year requirement does not apply to this ground.
However, even if the one year requirement did apply, the totality of the circumstances of this case, as discussed throughout this opinion, warrant a waiver of the requirement, and the same is waived by the Court.
Thus, the Court finds that, as to mother, this ground for termination of parental rights has been proven by clear and convincing evidence.
DISPOSITION:
The Court has found that the grounds of abandonment and no ongoing parent-child relationship have been proven by clear and convincing evidence as to the respondent father, and has found that the grounds of abandonment, failure to rehabilitate, and acts of commission or omission have been proven by clear and convincing evidence as to the respondent mother. In addition, the Court has found that these grounds have either existed for a period of more than one year or has granted a waiver of that statutory requirement based upon the totality of the circumstances in this case. Before entering an order of termination, however, the court must consider the six factors set forth in subsection (d) of Section 17-43a of the Connecticut General Statutes, as they existed on the last day of the trial.
 (1) DCYS entered into service agreements with mother in July, 1989, and again on March 5, 1990. A visitation schedule was put into effect both times, but were not complied with by mother. Additionally, efforts were made by DCYS to have mother visit subsequent to the November, 1989 placement, without success. Mother was encouraged to enter a substance abuse program but did not to do so. DCYS also provided housing assistance to mother during the five months Tasharian was with her in 1989. No services were offered to father as his location is unknown to DCYS.
 (2) The service agreement of July 7, 1988 was made into an expectation of the court. Mother failed to comply with the terms of that agreement. Mother did comply with the orders of the court to participate in psychological evaluations. No court orders were entered as to father.
(3) Tasharian appears to have emotional ties with her foster mother, CT Page 3152 whom she calls mom. Dr. Meier found no strong attachment of the child to her biological mother. The child has no ties to her biological father.
(4) The child is approximately three years of age.
 (5) Neither parent has adjusted his or her conduct, circumstances or conditions to make it in the best interest of the child to return to his or her care in the foreseeable future.
 Father has abandoned the child. Mother had only six visits with Tasharian between November 5, 1989 and September 21, 1990, the day of trial. She had no visits with the child since May, 1990. She has not maintained regular contact with DCYS or the child's foster parent since the child was last placed in foster care in November, 1989.
 Mother continues to have substance abuse problems and has not participated in a substance abuse treatment program. She has recently been arrested for and convicted of narcotics charges, and, at the time of trial, was awaiting sentencing for a narcotics conviction. There is no indication that mother is likely to change her situation in the foreseeable future.
 (6) Neither parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable conduct of anyone. While mother's financial situation was far from ideal, it was not a factor in her relationship with Tasharian.
JUDGMENT
Having considered the foregoing, it is found by clear and convincing evidence to be in the best interests of Tasharian for the parental rights of her mother and father to be terminated so that she may be raised in a permanent, secure and nurturing environment as an adopted child.
It is therefore ORDERED that the parental rights of Linda B. and Lamont D. are hereby terminated. It is further ORDERED that the Commissioner of DCYS be appointed statutory parent for the purpose of placing said child forthwith in adoption, and to secure that end, the said Commissioner is further ORDERED to submit to the court in writing no later than 90 days from the date of this judgment a report as to the progress toward such adoption and thereafter to report at such times and in such form as the court may from time to time require.
TERENCE A. SULLIVAN, JUDGE