[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: TERMINATION OF PARENTAL RIGHTS
This is a petition brought by the Department of Children and Families ("DCF") to terminate parental rights of parents in Lawrence R. ("Larry") a four year old child who has been in the custody of DCF since two weeks of age.
Larry is one of twin boys born December 10, 1991. His legal father is Lawrence R., Sr., who was married to and continually resided with his mother Penny R. His biological/acknowledged father is Dennis s., and the court so finds, based on paternity test results and acknowledgment of the parties. Each of his parents have problems which limit their child-caring ability. Mother had prior children removed from her care due to neglect and subsequently adopted. The legal father is mentally retarded and legally blind. The mother and legal father gave up the twin for adoption at birth, concentrating their efforts on attempting to care for just Larry, Jr. However, due to grave concerns raised by the hospital staff regarding the parents' judgment and ability to care for an infant, an order of temporary custody was obtained and Larry was placed directly from the hospital into a foster home. Mother and Larry R., Sr. subsequently consented to termination of their parental rights.
Dennis S., the biological father, also is disabled and has a steel plate in his head. Although it was known during the pregnancy that Dennis B., mother's extra marital boyfriend of many years, was the alleged father of the twins, he was not included in the planning for the birth, he was prevented from visiting mother and children at the hospital, and he was not originally named or included in the Order of Temporary Custody or Neglect Petition, filed 12/24/91. Mother claimed she had no contact with Dennis s. from the time she informed him of the pregnancy until shortly after CT Page 4186-A the twins were born.
However, mother provided father's name at the court hearing on January 2, 1992 and on January 3, 1992, he accompanied the parents to an office visit with Larry. Thereafter, the petition was amended to include him as biological father. Amended Petition and Amended Statement of Facts, filed 2/14/92.
The matter was continued for trial, and on November 10, 1992, the child was adjudicated neglected and committed to DCF for 18 months based on the mother and legal father's no contest pleas. Dennis B. was not present, but was represented by counsel. Expectations were set for mother and Lawrence R., Sr.
On October 9, 1993, Dennis B. sought to reopen the judgment and be considered for placement or custody of the child, or for expectations to be set for him. On December 7, 1993, his attorney marked that motion off without prejudice. In February, 1994 DCF filed for an extension of commitment and termination of parental rights. As to Dennis B., the petition alleged abandonment, failure to rehabilitate, and no parent/child relationship.
During the pendency of the termination proceedings, Dennis B. again moved to modify the judgment to seek custody of the child on March 24, 1994 and again marked his motion off on June 7, 1994. However, during the course of the trial on February 28, 1995, the court recessed the hearing to give father additional time to pursue reunification with the child and to make up the missed parent-child evaluation.
Thereafter, in July 1995, DCF amended its petition to allege only failure to rehabilitate and no parent-child relationship. The father and child were evaluated individually and jointly by Dr. David Mantell, Ph.D., who both testified and filed his report, Exh. C. After father learned in May 1995 the evaluation was unfavorable, he stopped visiting and attending court. Counsel continued to represent his interests in the subsequent hearings.
A termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between a child and his parent." General Statutes § 45a-707a(g). "Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children `undeniably warrants deference and, CT Page 4186-B absent a powerful countervailing interest, protection' Stanley v.Illinois, 405 U.S 645, 651," Anonymous v. Norton, 168 Conn. 421,425.
General Statutes § 17a-112(b) "carefully sets out and delimits four situations that, in the judgment of the legislature, constitute `countervailing interests' sufficiently powerful to justify the termination of parental rights in the absence of consent," In re Juvenile Appeal (Anon.), 177 Conn. 648,671. The evidence to support such a finding must be clear and convincing. General Statutes § 17a-112(b).
General Statutes § 17a-112 (b)(2) requires parental rights to be terminated if "by clear and convincing evidences it is established that the respondent's level of rehabilitation falls short of the level which would `encourage a belief that within a reasonabletime, considering the age and needs of the child,' the parent could assume a responsible position. Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further that such rehabilitation must be foreseeable within a reasonable time'." Inre Luis C., 210 Conn. 157 (1989) (Emphasis in original).
This is a case where the respondent father has made sincere efforts to improve himself so as to assume a parental role, but is and will be unable within a reasonable and foreseeable time to assume the responsibility of parenting this child. Larry, Jr. exhibits evidence of mild cerebral palsy and some developmental delay and an indication of Attention Deficit Disorder features which makes him easily upset and frustrated and having a short attention span. He also has some speech/articulation difficulty and has orthopedic problems wearing prosthetics in both shoes. On evaluation, Dr. Mantell found that the father was well-meaning but showed significant judgment problems and important intellectual limitation, making him unable to recognize the special needs of the child and their implications for the child's care. The father would require assistance to satisfactorily care for the child and "does not have the ability to rehabilitate to a degree that would enable him to raise this child on his own." Evaluation, Exh. C. The court is entitled to give appropriate weight to the mental health professionals who have evaluated the case. In re NicolinaT., 9 Conn. App. 598, 560 (1987).
These findings were confirmed by the social worker. The father himself is easily frustrated and depends on others including CT Page 4186-C the mother, for care and assistance. When discouraged, he would stop visiting the child for long periods of time. He relied on the; social worker to provide visitation, setting the schedule, reminding and transporting. He tried counseling, but dropped out. He tried working, but could not find steady employment that pays more than his disability income. During visits he was able to interact and play with the child, but the foster mother or social worker provided the structure and physical care for the child. He never demonstrated the ability to assume care of the child on his own.
In determining whether Dennis B. has rehabilitated himself to the extent that he could assume a responsible position in the child's life, the court may consider the factors listed in General Statutes § 17a-112 (d). In re Shavoughn K., 13 Conn. App. 91, 98, cert. denied, 207 Conn. 805 (1988); see also, In re Barbara J.,215 Conn. 31, 46-47 (1990).
(1) Services offered to facilitate reunion
The Department has made significant continued efforts to facilitate reunion. The Department has consistently offered weekly visitation and transportation, whenever father requested. Reunion was hampered by father's vacillation and dependency, not by any failure to offer services by DCF.
(2) Reasonable efforts to reunify
The Department's reunification efforts have been reasonable, under the circumstances of this case. Dennis B. was unable to visit consistently, even with assistance, on at least two occasions going for months at a time without visiting.
Even so, the Department always facilitated visitation and services when requested.
(3) Compliance with court-ordered expectations
Court-ordered expectations were not set for father, although twice requested and twice marked off by father. When the court stayed the termination proceedings in February 1995 as to father, he was ordered to cooperate with a parent-child evaluation and to visit weekly. Dennis B. did cooperate with the evaluation, but when he learned the results of the evaluation were unfavorable, he stopped visiting entirely, stopped cooperating with DCF, and CT Page 4186-D declined to participate in the subsequent court proceedings.
As of the September 5, 1995 hearing, he had not attended court since February 1995 and had not visited since April 1995.
(4) (5) Child's feelings and emotional ties and age
Although the father and child interacted appropriately, the child clearly identifies his foster parents as his parents and has established a strong parent-child bond with his foster mother, with whom he has resided for over 3 years since he was 8 months old. The child is now 4 years old.
(6) Efforts made by parent to adjust circumstances
As stated previously, although Dennis B. did make sporadic, sincere efforts to improve his living circumstances so that his parental rights would not be terminated, he was unable to sustain the effort or follow through consistently with visitation, a job, counseling or social services to ever realistically assume a responsible, caretaker role for this child.
(7) Barriers to reunification
There is no evidence that any unreasonable conduct or economic circumstances prevented father from maintaining a meaningful relationship with the child. He was simply unable to visit consistently and take on a responsible, caretaker role.
Accordingly, the court finds by clear and convincing evidence that Dennis s. has failed to achieve such degree of personal rehabilitation as would encourage the belief that he could ever assume a responsible position in the life of this young child, who needs a constant, responsible, reliable caretaker sensitive to his needs. These conditions have existed for more than one year
The petition also alleges the absence of an on-going parent child relationship as grounds for termination. General Statutes § 17a-112 (b)(4). Since this child was removed from parents at birth, and father was able to establish at least a sporadic visiting relationship as a noncustodial parent, termination on this ground is inappropriate. In re Valerie D., 223 Conn. 492 (1992).
The court further finds that it is in the child's best interests to terminate the parental rights of his biological father CT Page 4186-E Dennis B. so that the child can be freed for adoption, in that mother and legal father have already consented to terminate their parental rights for this purpose. The needs of the child for a stable, permanent home are clearly more important than maintaining a tenuous relationship with his biological father.
The petition to terminate parental rights of Dennis B. in Larry R., Jr. is granted for the reasons stated. DCF is appointed statutory parent of the child and shall report the court within 90 days on a permanent plan.
SO ORDERED, Karen Nash Sequino, Judge