MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of George S.[2] to his two daughters, April, now age fifteen, and Wanda, now age ten. This case began with the filing of neglect petitions on April 25, 1996, by the Department of Children and Families (hereafter, "DCF"), and, on August 2, CT Page 7203 1996, the children were adjudicated neglected and committed to the custody and care of DCF for a period of one year. An extension of commitment for one year was granted on June 6, 1997, and, on June 3, 1998, the commitments were again extended until further order of the court. On October 22, 1997, DCF filed a petition for termination of parental rights as to the children. An amendment to the petition was filed on December 1, 1997.
The court finds that father has been personally served with the petition for termination, has appeared and has a court-appointed attorney. The Court has jurisdiction in this matter, and there is no pending action affecting custody of the children in any other court.
The petitioner, DCF, alleges that the ground for termination of father's parental rights is failure to rehabilitate himself after a finding of neglect.[3] Father has denied the charges pending against him.
FACTS
The court, having read the verified petitions, the social studies, and the various documents entered into evidence, and having heard the testimony of the witnesses and evaluator, makes the following findings and reasonable inferences supported by these facts.
In February, 1990, father was sentenced to twelve years, suspended after eight years, with three years probation, for robbery, kidnapping, risk of injury and burglary convictions. At that time, April was almost eight years of age, and Wanda was almost three. Father was released from confinement in June, 1996. In the meanwhile, on April 25, 1996, neglect petitions against father and mother had been filed. On August 2, 1996, the children were adjudicated neglected and committed to the care and custody of DCF.
The children had been voluntarily placed in October, 1995, with a step-sister of mother, E., and E.'s husband. April had been without her father for several years due to his incarceration, and her mother had other issues, including substance abuse. Before entering E.'s home, she had been surrounded for years in an atmosphere of illegal drugs. She had been found outside of bars waiting for her mother to insure mother's safe passage home. Her school work had suffered, and CT Page 7204 there had been sessions with school personnel trying to remedy the situation. After entering E.'s home, April's attitude, behavior and school performance improved markedly. Wanda, too, endured years of living in degrading conditions. On entering E.'s home, Wanda's condition has improved and she is doing very well in school. She is close to, and relies upon, her older sister.
DCF continued the placement with E. after the finding of neglect on August 2, 1996. Father entered into expectations at the time of the commitment (Exhibit 2). He was to keep his whereabouts known to DCF, visit the children as often as DCF permitted, participate in drug and alcohol counseling, not engage in substance abuse, and have no further involvement with the criminal justice system.
After August 2, 1996, visitation commenced under the court order and kept to a mostly regular schedule. On October 10, 1996, father was arrested for assault, and assault on a police officer. On January 23, 1997, he was arrested on a charge of violation of protective order. His cases concluded on March 5, 1997, with a total effective sentence of five non-suspended years in prison. Until the cases were resolved, there was a period of time when DCF was not able to locate father to arrange visitation. Subsequent to incarceration, father has had one visit with the children in October, 1997. April had been reluctant to visit her father in prison before October, 1997, and did not want to visit him after this October visit. Wanda relies upon April and also decided not to visit father, except for the October, 1997, occasion.
With regard to the expectation that father not engage in substance abuse, he testified that at the time of his arrest in October, 1996, he was abusing substances, including alcohol. He had not entered into any substance abuse programs between his release in June, 1996, and the date of his arrest in October, 1996, nor between October, 1996, and the date of his sentence in March, 1997. In Cheshire Correctional Center over the year 1997, he has enrolled in several programs, some he claims to have completed, but he did not have certificates to show the Court. These programs include ones for anger management, mental health counseling, and a GED program. He is on a waiting list for AA/NA treatment. He states that he has completed a "Tier I" program and awaits entry into "Tier II." He informed the Court that he believes that he has regained mental and physical health, but is not financially stable at this time. CT Page 7205
Father also stated to the Court that he is content with Wanda's placement with E. He is concerned about April. He introduced a letter from June, 1997, where April describes some of her activities and relates some details about her relationship with her boyfriend of six months. Father does not approve of April's lifestyle and wants her placement to be with his mother in New York.
Father's mother, Luz S., testified that she would be interested in having custody of both April and Wanda and a half-brother, George, because they were all her grandchildren. She is licensed by the State of New York to receive foster children at her home. April lived with her at various times beginning in kindergarten and ending in the fifth grade. Luz S. also testified that she has traveled to E's house to see April and Wanda, and that April writes to her occasionally. Luz S. stated that she is always appropriate with her discipline of the foster children in her home, even when they are difficult cases. She denied any physical abuse.
It is questionable how much of a resource Luz S. might provide, as she and her husband have property in Florida, and it is likely that she will be moving there within the next year. Because April and Wanda are close to family members in Connecticut, a move to Florida would not be appropriate.
April also testified at the request of her father. At her fifteenth birthday, about two months ago, April and DCF agreed that she would leave E's house and live elsewhere in Connecticut. She is living with a family with whom she was previously acquainted, attending school and in good health physically and mentally. Father contended that she was moved because she was out of control and not obeying the rules of E's home. DCF social worker Flatley stated that there were several motives in changing April's location. She was not ready to live by the Pentecostal faith of E. and her husband, as she was raised a Catholic. In addition, she deserved to have the freer lifestyle of a teenager, such as wearing jeans and going to parties, that she has at the new placement, and did not always have at E's home.
April also noted the deep disappointment she experienced when her father was arrested and was sent to prison both in 1991 and 1997. She has decided that she does not want contact with him at this time. In one instance, in December, 1996, when visitation CT Page 7206 between April, Wanda and father was still occurring, she noticed that he was intoxicated.
With regard to her grandmother, Luz S., April stated that she does not want to reside with Luz S. When she was living with Luz S. a few years ago, she saw Luz S. repeatedly strike her son, April's uncle, with a wiffle bat. Whether April is correct in actually recalling this abuse, and, as indicated, Luz S. denies using physical discipline, it is still true that April fears returning to Luz S.' home. April did testify that she would like to see Luz S. occasionally. April has not written off her mother entirely, even though her parental rights are terminated. According to April, she intends to keep in touch with her mother, Wanda M., and, perhaps, even her father, at some time in the future.
The court heard the testimony of the evaluator, psychologist Rafael Mora de Jesus. In his report based upon an examination of January, 1998, he found father to be in denial about the extent of his substance abuse problem. He would need long-term residential treatment to resolve his problems of up to three years. Both April and Wanda have special needs brought about by their difficult existence. Both feel angry and betrayed by their father. April has lost her role as a child and has become "parentified." She needs to recoup her childhood and receive nurturing by adults. Father would not be capable of parenting at this time, or of meeting the children's special needs.
As to Luz S., Dr. Mora de Jesus recognized April's fear of being with her. He also concluded that April felt disappointed in Luz S. for abandoning her when there were earlier family crises. Also Dr. Mora de Jesus found Luz S. to exert too much control over her husband, to have an authoritarian demeanor and to have a tendency to play favorites among her grandchildren.
Dr. Mora de Jesus concluded that Wanda has psychologically bonded with E. and her family. He also found that in January, 1998, April had bonded with E. April has, as indicated, recently moved out of E.'s home.
DCF social worker Flatley stated that the intention is to seek adoption for Wanda with E. and her husband. Since April is fifteen, adoption at this time is not appropriate. She will remain in foster care until her sixteenth birthday and then will be assisted with college and independent living. Ms. Flatley CT Page 7207 still recommended termination of parental rights for April, as she wants to leave the problems of her biological father behind and have a fresh start.
ADJUDICATION[4]
The Court finds by clear and convincing evidence, as of December 1, 1997, that DCF must prevail against father on the ground of failure to rehabilitate as urged at trial. Father has failed to rehabilitate himself as required by General Statutes § 17a-112(c)(3)(B). The children were committed as neglected on August 2, 1996, and on December 1, 1997, father had failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, he could assume a responsible position in his children's lives.
Father did not commence any programs in the time between being released from prison in June, 1996, and commencing his new sentence in March, 1997. At prison, he did enter programs and is to be commended. The course of treatment is not over, however. Dr. Mora de Jesus believes at least a period of two years would be needed after completion of the programs. The optimum treatment for father would be a two-year in-patient program at Hogar-Crea or a similar program. Under the facts of this case this length of time is not reasonable for the reestablishment of his role as a parent. In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532
(1986).
Father also re-involved himself with the criminal justice system in violation of the court ordered expectations. He has failed to keep up visitation, although some of this failure is due to the two children opting not to see him as he became involved in crime and substance abuse again. At times, DCF did not know of his whereabouts. The failure to meet expectations is evidence of a failure to rehabilitate. In re Shavoughn K.,13 Conn. App. 91, 100, 543 A.2d 1243 (1987).
The court has therefore found an adjudicatory ground as of December 1, 1997. The court also finds by clear and convincing evidence that the facts warranting adjudication have existed for more than one year prior to the filing of the termination petition.
DISPOSITION
CT Page 7208
Having found that the grounds exist for termination of parental rights, the court must now consider the appropriate disposition. Here, the focus is not on the father, but on the best interests of the children. The court may consider the evidentiary time-frame up to the present. In re Tabitha P., supra
at 367. The following are the required findings of General Statutes § 17a-112(e):
1. Appropriate and timely services were offered to father, including counseling, transportation assistance, substance abuse treatment and visitation coordination. The specifics of the offered assistance are discussed above.
2. The court finds that DCF made reasonable efforts to reunify father with his children, given the situation and circumstances discussed above. Father never took advantage of DCF's efforts. He did not complete any of the recommended counseling programs of the expectations. He has attempted to comply with expectations in prison but has not completed his programs.
3. DCF, with the approval of the court, set reasonable and realistic expectations in order to reunify the family. Father failed to comply with the expectations regarding substance abuse, visitation and involvement with the criminal justice system, but has made a good faith effort to comply with the substance abuse treatment requirements in prison.
4. Wanda has a strong emotional tie with her foster family. April has a good relationship with the foster family, but has now moved on to another placement due to her reaching her later teen years. Neither Wanda nor April favor contact with father at this time.
5. Wanda is ten years of age and April is fifteen.
6. Father made no effort to adjust his circumstances to conform his conduct to acceptable parental standards. Giving him additional time would not likely bring his performance as a parent within acceptable standards to make it in the best interests of the children to be reunited. The court relies on the failure of father to complete treatment of his substance abuse problem and to avoid the criminal justice system.
7. Father was not prevented from regular, continued contact with his children by his limited economic resources. DCF encouraged contact between father and the children and provided services in CT Page 7209 light of father's financial status. DCF provided opportunities for contact between father, the children and the foster parents (E. and her husband). All parties lived in reasonable geographic proximity. The testimony shows that DCF did not engage in any unreasonable conduct, but acted quite reasonably under the circumstances of this case.
The court notes that the children's attorney has recommended termination of parental rights. Father is not able to assume his role of a parent today. His suggestion that his mother take over the raising of April does not appear realistic to the court, based upon Dr. Mora de Jesus' views and grandmother's own planned move to Florida. The court relies on Dr. Mora de Jesus' opinion that Wanda's adoption by E. and her husband is appropriate at this time. This finding is made after considering Wanda's sense of time, her need for nurture and security, and her relationship with E. and her husband. The court also believes that April, as a young woman, should have the opportunity, as she desires, to find herself at her new placement.[5] Dr. Mora de Jesus believes that April will keep in touch with her mother and her grandmother, and perhaps her father at some time. At the same time, April will have psychological burdens lifted by having her parental rights terminated. The court finds, therefore, by clear and convincing evidence, that it is in April's and Wanda's best interest to terminate George S.' parental rights to them.
ORDER
Based upon the foregoing findings, the court determines that it is in April's and Wanda's best interests for a termination of parental rights to enter with respect to their father, George S., and it is ORDERED that the parental rights of George S. are terminated. DCF is hereby appointed the statutory parent. A permanency plan for both children shall be submitted within ninety days. A review plan for them shall be filed in accordance with state and federal law.
Henry S. Cohn, Judge Child Protection Session
[2] On February 26, 1998, Wanda M., the mother of the two children, consented to termination of her parental rights.
[3] The grounds stated in the amendment dated December 1, 1997, have been withdrawn by petitioner. See Motion to Amend Petition, CT Page 7210 dated June 5, 1998.
[4] No finding is necessary pursuant to General Statutes §17a-112 (c)(1), because the court has made findings on June 6, 1997, that efforts to reunify were not appropriate. See General Statutes § 17a-110 (b).
[5] Father's concern regarding April, as evidenced by a letter of June, 1997, appears to be dated. The current placement is appropriate for April.