ABBE *against* NEWTON and wife :

### IN ERROR.

*A* and *B*, his wife, executed a mortgage of certain real estate to *C*, as security for a promissory note for 1000 dollars, given by *A* to *C*. One moiety of the mortgaged premises was owned by *B*, in fee-simple, which she had inherited from her father. *C* was her mother, and, as her father's widow, was entitled to dower in one-third part of such moiety. It was thereupon agreed between *A* and *B*, on the one part, and C, on the other, that *C* should release to *A* her dower, (with a small reservation,) and convey to him her remaining interest in her late husband's personal estate, which had not been set out to her; and that *A* should give his note to *C*, for 1000 dollars, secured by the mortgage above-mentioned. This agreement was carried into effect, constituting the sole consideration of the note. The value of the property thus transferred to *A*, was less than one-third of the sum for which the note was given. It was the expectation of the parties, that *C* would receive the interest of the note, during her life, and that, at her death, the note would become the property of *B*, her sole heir at law; but there was no agreement to this effect; nor was there any mistake in the execution of the note or mortgage; nor were they, in any respect, different from what the parties intended to make them. At the time the mortgage was given, *B* was under the age of twenty-one years, and *A* was largely indebted to other creditors, though not insolvent. *A* afterwards mortgaged his interest in the premises to *D*, to secure a debt due to him; and by subsequent conveyances, *A's* equity of redemption became vested in *D*. On a bill of foreclosure brought by *C* against *D*, making *A* and *B* also parties, it was held, 1. that the consideration of the note was grossly inadequate, and from the circumstances of the case it might fairly be inferred, that the parties understood it to be so; 2. that the securities, so far as they exceeded the value of the property conveyed, were entirely voluntary, and must fail as against *D*; 3. that consequently, the amount of the mortgage debt equitably due, was limited to the actual value of such property.

THIS was a bill of foreclosure, brought by *Aralza Newton* and *Laura*, his wife, against *Timothy Abbe* and others. *Timothy Abbe* filed his cross-bill and answer, alleging, 1st, that *Elizabeth Abbe*, purporting to be one of the mortgagors, was under the age of twenty-one years, when the mortgage was given, and that consequently, it was void as to her; and 2dly, that by the mistake and inadvertence of the draftsman and of the parties, the note secured by the mortgage, and the condition of the mortgage, were variant from the agreement of the parties; praying for liberty to redeem, upon equitable terms.

The cause was heard before the superior court, in *Hartford* county, *January* adjourned term, 1848, on the bill,

cross-bill, and answer; and thereupon the court found the following facts.

*Timothy H. Abbe* having given his promissory note to *Laura Ensign,* then a feme sole, now the wife of *Aralza Newton,* for the sum of 1000 dollars, payable on demand, with interest, he, *T. H. Abbe,* and *Elizabeth,* his wife, on the 23rd of *April,* 1844, executed to said *Laura Ensign* a mortgage deed of a certain parcel of land in *Enfield,* as security for the payment of such note; and no part of the sum thus secured has since been paid.

At the time of the execution and delivery of said mortgage deed, by *T. H. Abbe* and *Elizabeth,* his wife, she was under the age of twenty-one years. One moiety of the premises was her own estate in fee-simple, by inheritance from her late father, *Reuel Ensign,* who died, leaving her his sole heir at law; and said *Laura,* his widow, was entitled to dower in one-third part of such moiety. An agreement was thereupon entered into, between said *Laura,* on the one part, and *T. H.* and *Elizabeth Abbe,* on the other, that said *Laura* should release to *T. H. Abbe,* all her dower in the premises, (reserving a certain portion thereof, which included part of the dwelling-house, to be used by herself, during her life, but not to be used for any other purpose, or rented to any other person;) and that she should receive therefor, and for her remaining interest in her husband's personal estate which had not been set out to her, said note for 1000 dollars, to be secured by *T. H.* and *Elizabeth Abbe,* by a mortgage upon said mortgaged premises. It was the expectation of the parties, that said *Laura* would continue to receive the interest of said note, during her life, and that, at her death, it should become the property of said *Elizabeth,* her sole heir at law; but the court did not find any agreement that said *Laura* should receive the interest only, or that said note, at her death, should be the property of said *Elizabeth;* or that there was any mistake in the execution of said note or mortgage; or that they were, in any respect, different from what the parties actually intended to make them.

The whole real estate of *Reuel Ensign,* deceased, was of the value of 625 dollars only; the whole annual income thereof was from 70 to 80 dollars; and the annual income of that part of said *Laura's* dower which she did not so re-

*Hartford,*
June, 1848.

Abbe
*v.*
Newton.

lease, was at least 20 dollars; and her remaining interest in said personal estate, was of the value of 58 dollars, and 59 cents, only. The consideration of said note of 1000 dollars, was not equal in value to one-third part of the sum therein promised to be paid.

On the 13th of *April* 1846, *T. H. Abb*e was justly indebted to *Timothy Abbe*, by a promissory note of that date, for 1000 dollars, payable on demand, with annual interest; and on the same day, he, by his deed duly executed, mortgaged to said *Timothy Abbe*, for the security of said note, the life estate of the mortgagor in the moiety of said mortgaged premises, belonging to his wife *Elizabeth*, and the other moiety thereof, which then belonged to himself in fee-simple. This note is still due and unpaid.

On the 5th of *December*, 1846, *T. H. Abbe*, being insolvent, by his deed of that date, duly executed and lodged in the office of the court of probate, conveyed all his interest in said mortgaged premises to trustees, in trust for the benefit of all his creditors, under the statute of 1828. On the 30th of *March* 1847, the trustees, in pursuance of an order of the court of probate, sold and conveyed all *T. H. Abbe's* interest and equity of redemption in said mortgaged premises, to *Robert M. Abbe ;* who afterwards conveyed said interest and equity of redemption to *Timothy Abbe.* Before the last mentioned conveyance, *viz.* on the 12th of *January* 1847, *Timothy Abbe*, having a debt against *T. H. Abbe*, by his promissory note for the sum of 600 dollars, payable on demand with interest, commenced a suit thereon, against *T. H. Abbe*, and attached all his interest in said mortgaged premises ; which debt is still due, and said suit is still pending in the superior court.

The court found, that the mortgage deed to said *Laura,* purporting to have been executed by *T. H. Abbe* and *Elizabeth Abbe,* was not in law, the act and deed of said *Elizabeth,* by reason of her minority ; and that when said note and mortgage were given to said *Laura, T. H. Abbe*, besides said debt to *Timothy Abbe,* was largely indebted to sundry other creditors ; but the court did not find, that *T. H. Abbe* was insolvent, at the date of said note and mortgage, though at the time of his assignment for the benefit of his creditors, on the 5th of *December* 1846, he was greatly insolvent.

Upon these facts the court declared the mortgage deed described in the plaintiff's bill to be null and void, as to *Elizabeth Abbe,* and passed a decree against *Timothy Abbe,* foreclosing his equity of redemption in the mortgaged premises, if he should fail to pay to the plaintiffs the sum of 1119 dollars, 83 cents, on or before the first *Monday* of *January* 1849.

To revise this decision, *Timothy Abbe* brought the record before this court, by motion in error.

*Toucey,* for the plaintiff in error, after remarking, that as the plaintiff in error came in, by his cross-bill, for redemption, he offered to do equity—*i. e.* to pay the just consideration which went into the mortgage,—contended, 1. That he was entitled to the relief he sought, by reason of the inadequacy of the consideration. The payee of the note could not enforce payment of it with a safe conscience. The inadequacy of the consideration was such as to show fraud or imposition; which, in a court of equity, may be presumed. *Gallatian* v. *Cunningham,* 8 *Cowen,* 370, 1. Here, more than two-thirds of the note is without consideration. *Newl. Cont.* 357. & seq.

2. That the inadequacy in this case does not stand alone. Here, in the first place, a mother was dealing with her minor daughter, and the daughter's husband, who had just joined the family, and was largely indebted. Secondly, it was the expectation of the parties, that nothing but the interest of the note would ever be paid, and that the principle would become the property of the daughter, and consequently of her husband. And this expectation was entertained in that family confidence, which never doubts that right will be done among themselves, without much regard to legal forms. Thirdly, although there was no mistake of law or of fact, then existing, yet there was a total misapprehension of the use to be made of the note.

From these considerations, one of three conclusions is irresistible: first, that the party did not understand the bargain made; or secondly, that there was a trust and confidence between the parties; or thirdly, that the arrangement was influenced by the existence of creditors.

3. That in the case of such an unconscionable agree-

*Hartford,*
*June, 1848.*

Abbe
*v.*
Newton.

ment, even at law, it has been held, that only the real value of the consideration can be recovered. *James* v. *Morgan,* 1 *Lev.* 111.   *Floyer* v. *Edwards, Cowp.* 112.   *The Goldsmiths Company* v. *Carter, Id.* 116.   *Jestons* v. *Brooke, Cowp.* 793.   *Cutler* v. *How,* 8 *Mass. R.* 257. 260.   *Baxter & al.* v. *Wales,* 12 *Mass. R.* 365.   In an action at law, the consideration of this note would be enquired into; and under the circumstances of confidential relation, parental influence, family confidence, just expectation and gross inadequacy, there could be no recovery on it beyond the fair value of the consideration, which went into it: *a fortiori* in a court of equity, where the payee comes for relief, it will not be enforced beyond that extent.

4. That the decree is erroneous, as it is against a *bona fide* creditor, who is not only a subsequent mortgagee, but also an antecedent creditor, who, having attached the property, is therefore entitled to redeem.   This brings up the question, whether a person largely indebted has the unlimited power to dispose of his property to strangers, as against prior creditors.   It is a general principle, that no man has such a power over his property, that he can dispose of it so as to defeat his *bona fide* creditors, unless for a full consideration; and a constructive fraud results conclusively in favour of such creditors against mere gratuitous conveyances; for a man must be just before he is generous.   1 *Sw. Dig.* 281. 278.   *Newl. Cont.* 383. 387.   1 *Sto. Eq. s.* 355. *Pratt* v. *Powell, Amb.* 387.   *Partridge* & ux. v. *Gopp, Id.* 596.   *Read* v. *Livingston,* 3 *Johns. Ch. R.* 481. 492. & seq. That a conveyance to a stranger, without consideration, by one largely indebted, is constructively fraudulent, as against existing creditors, will not be denied.   1 *Sw. Dig.* 278. If the motive were shown to be good, the object in the highest degree commendable, or of the greatest public utility; yet the justice due to creditors would prevail over it.   The reason is, that the estate of such debtor, properly, morally, rightfully, belongs to his creditors.   The principle is eminently just, and of great public importance.   It cannot be evaded, by a mere nominal consideration, or one greatly inadequate.   The same reason applies to the excess beyond the true value of the consideration, as would apply to the same amount, if embraced in a different instrument, without

consideration. Even if the excess is covered by a *bona fide* liability, the conveyance, to that extent, cannot be sustained, as against *bona fide* creditors. To the extent of the valid consideration, it will be upheld: as to the rest, it will be set aside. *Sanford* v. *Wheeler*, 13 *Conn. R.* 165.

5. That there are, in this case, no facts or circumstances to repel the legal inference of fraud arising from the manifest inadequacy of consideration.

*Parsons* and *Goodman*, for the defendants in error, contended, 1. That inadequacy of consideration, unaccompanied with fraud, is not a sufficient ground for altering the contract of the parties, or defeating its enforcement. Here the finding of the court negatives all fraud. To be available as a ground of relief or defence, fraud must be alleged and proved. It will not be presumed without proof, either at law or in equity. *Weeden* v. *Hawes*, 10 *Conn. R.* 50. *Segur* v. *Tingley*, 11 *Conn. R.* 134. *Clark* v. *White*, 12 *Peters*, 178. 196.

2. That if the value of the consideration can be enquired into, and made the measure of recovery, it is so only between the parties to the transaction. No one can take advantage of an oppressive bargain but the party injured by it. If he waives his defence, the man who stands behind him cannot take it up. *Reading* v. *Weston*, 7 *Conn. R.* 409. But here *T. H. Abbe*, the mortgagor, makes no complaint, and asks for no relief. He is not a party to the cross-bill.

3. That if a conveyance is voluntary, but there is no design of fraud, a *subsequent* creditor cannot take advantage of the want of consideration. 1 *Sto. Eq. s.* 356. *French* & al. v. *Shotwell*, 5 *Johns. Ch. R.* 555, 565. & seq. The power of the owner over his property is limited only by the rights of *prior* creditors.

4. That it does not appear from the finding, that there was not a fair and full consideration at the time. The facts are not found sufficiently to shew that there was not.

HINMAN, J. The plaintiffs, *Aralza Newton* and wife, seek to foreclose a mortgage, executed to the wife, previous to her marriage, by *Timothy H. Abbe* and his wife *Elizabeth*. The mortgagee was then a single woman, the widow of *Reuel*

*Margin:*

Hartford,
June, 1848.

Abbe
*v.*
Newton.

*Ensign,* and the mother of said *Elizabeth,* who was her only child.

The mortgagors are made parties to the bill; but *Elizabeth* was a minor when the mortgage was executed; and her husband has no longer any interest in the property, and no decree is now asked for against them. The case, as to them, therefore, may be dismissed, without further notice.

The note secured was given in consideration of a sale, by the mortgagee, of a small portion of her dower and of her interest in the personal estate of said *Reuel Ensign.* She released to her son-in-law all her interest in said personal estate, and to that part of her dower not included in a portion of the dwelling-house, which she reserved. It appears from the finding, that the value of this property was less than one third part of the note given for it. Its precise value does not appear; but facts are stated, from which it is clear, that it was not only less, but very much less, than one-third of the note. The annual value of the whole real estate of *Reuel Ensign* is found to have been from seventy to eighty dollars only. Deducting from one third of this the sum of twenty dollars, the annual value of that part of the house which she reserved, and there is left about the sum of seven dollars, as the annual value of the dower conveyed: and for this, and the sum of 58 dollars, 59 cents, in personal estate, she obtains a note of 1000 dollars, secured by the mortgage in question. A clearer case of grossly inadequate consideration, it cannot be supposed will often arise. We think, also, that it may fairly be inferred from the circumstances, that the parties understood the consideration to be inadequate. It is found, that it was their expectation, that the note would not be paid; but that the interest on it would be paid annually, during the life of the mortgagee; and then, that it would become the property of said *Elizabeth,* as her only heir.

There may not have been enough in this expectation to authorize us to hold it to be inequitable to enforce the contract as against *Timothy H. Abbe;* though it is apparent, that to do so, would, to some extent, operate as a surprise upon him; but in connexion with the inadequacy of the consideration, it shows most clearly, that the parties understood and knew, that the consideration was inadequate. The inequality between the note and the value of the property, is so

great, that it is hardly credible, that it should not have been seen; but when it is found that it was the mutual expectation of the parties, that the note was never to be paid, it explains their willingness to execute the contract, notwithstanding the inadequacy; and thus it furnishes additional evidence of the inadequacy having been known.    This expectation was, without doubt, founded, in great part, upon the inadequacy of the consideration.    This, and the family confidence then existing between the parties, were the only circumstances that could have raised any such expectation; and, together, they induced Mr. *Abbe* to think that his mother in-law would not make use of the legal claims which the transaction gave her, to his injury; but, that she would do right with him, in regard to the note.

So far, then, as the securities exceeded the value of the property, they were entirely voluntary.    In other words, the note was, in great part, and so far as a promise to pay can be considered such, a mere gift.

We are aware, that as there was a consideration sufficient to support his promise, it could not benefit *Timothy H. Abbe,* because he knew that he was making an improvident contract.    Indeed, this circumstance would be strong evidence, that he was not deceived or defrauded; and, on this ground, would operate against him.    His rights, however, are not now in controversy; and in regard to *Timothy Abbe,* a creditor of his, the fact that the note and mortgage, the greater part of them, were without consideration and voluntary, and so understood to be, at the time, becomes, in connexion with other circumstances proved in the case, of the utmost importance.

In the case of *Salmon* v. *Bennet,* 1 *Conn. R.* 525. the validity of a voluntary conveyance, against the claims of a creditor whose debt existed at the time, was considered; and the principles upon which it was thought such conveyances ought to rest, were laid down by the court, with great clearness and precision.    That decision, so far as it goes, has ever been considered as settling the law of the state on the subject.    It has, indeed, been doubted, on the ground of its going too far in upholding such conveyances; but not, to our knowledge, on the ground that the principles designed to guard against fraud, are there laid down with too much strictness or rigour.

*Hartford,*
*June, 1848.*

Abbe
*v.*
Newton.

The validity of such conveyances has, also, been the subject of much enquiry elsewhere; and there has been much professional controversy on the subject. We shall not enter into it. We are satisfied with our own decision—the more so, since, as remarked by a distinguished judge, "there is much reasonableness and equity" in its doctrines, and there is reason to believe they will, finally, very generally prevail. See 1 *Sto. Eq.* 356. *s.* 363, 4, 5.

We think the principles laid down in that case, decisive of this. After stating, that it was not necessary that an actual fraudulent intent should be proved, in order to render such conveyances invalid against existing creditors, Judge *Swift,* in delivering the opinion of the court, says: " If the grantor is considerably indebted and embarrassed, at the time, and on the eve of bankruptcy; or if the value of the gift be unreasonable, considering the condition of the grantor, disproportioned to his property, and leaving a scanty provision for the payment of debts; then, such conveyances will be void."

Admitting, without enquiry, for the purposes of this case, merely, that Mrs. *Newton* might, as the mother-in-law of the mortgagor, properly be the subject of a reasonable provision, as a voluntary settlement upon her, which would be protected from the claims of creditors; we still think, that upon these principles, this conveyance, so far as it was without consideration, must fail, as against *Timothy Abbe,* a creditor of the mortgagor. *Timothy H. Abbe* was under no legal or moral obligation to maintain or support his mother-in-law; and however willing, while his marriage to the daughter was yet recent, we have found no evidence that he was able to do so. On the contrary, on the 23d of *April* 1844, when the conveyance was executed, he was not only indebted to *Timothy Abbe,* in the sum of 600 dollars, on a note now in suit, and by virtue of which this property has been attached; but he was also largely indebted to other persons. The amount of this large indebtedness is not indeed found; but by this expression, it was undoubtedly meant, that he was largely indebted in reference to his means of payment; and as it appears, that within about two years, he became a bankrupt, it is an obvious inference, especially in the absence of any proof to the contrary, that this conveyance materially aided, if it was

not a principal cause of, his insolvency and failure. If this was not so, it should have been shown by the plaintiffs.

Abbe
*v.*
Newton.

The circumstances are so suspicious as fairly to cast upon them, not only the burden of showing that the transaction was honest, but that the gift was one which Mr. *Abbe* could make, without depriving him of the means of being just to his creditors.

For these reasons, and inasmuch as there was no fraud in fact, we think the superior court should have found the actual value of the property conveyed by Mrs. *Newton*, and should have considered that sum, with the interest upon it, as the amount equitably due upon the note. It follows, that in allowing the whole face of the note to the plaintiffs, there was error; and the decree must, therefore, be reversed.

In this opinion the other Judges concurred, except Storrs, J., who expressed a qualified dissent.

Decree reversed.