[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 9, 1991, the Department of Children and CT Page 3770 Youth Services (hereafter "DCYS") filed a petition to terminate the parental rights of Carol M. to her son, Gene M., born March 31, 1991, alleging the four statutory grounds for termination pursuant to Connecticut General Statutes, Sec. 17a-112(b), together with a request for waiver of the one year requirement under sub-paragraph (c) of this statute.
The trial was held on March 23, 1992, and DCYS called two witnesses, Ms. Joan Tarsa, social worker with DCYS and Ms. Judith Finley, Ph.D., a licensed clinical psychologist at Fairfield Hills Hospital. The following exhibits were entered into evidence by DCYS without objections: Exhibit A, the DCYS mandated social study and two treatment plans; Exhibit Bl, dated April 28, 1991; and Exhibit B2, dated October 21, 1991. The mother was represented by counsel and testified in her own behalf but called no witnesses. The father is unknown and has never appeared in any of the prior court proceedings ; therefore, was never a named party.
DCYS is required to prove one of these four grounds by clear and convincing evidence in order to prevail. Proof must be sufficient to convince the Court beyond an average certainty that: the respondent's rights as a parent should be terminated. In re Juvenile Appeal (84-BC), 194 Conn. 254,255; In re Theresa S., 196 Conn. 18, 24.
A petition for the termination of parental rights consists of two phases, the adjudicatory phase and the dispositional phase. Connecticut Practice Book, Sec. 1042, 1044, 1059. There is no requirement that the adjudicatory phase and the dispositional phase should be held in different hearings; rather, a unified hearing is permissible. In re Juvenile Appeal (84-AB), 192 Conn. 254, 259 (1984). There is a different purpose for each of the two phases. In the adjudicatory phase, the Court receives evidence to determine the validity of the allegations made in the petition, and the Court is limited in receiving evidence to the events that occurred prior to the filing of the petition, in this case, December 9, 1991. The dispositional phase takes into account the bests interests of the child, and the Court is permitted to hear evidence and take into consideration facts and events to the date of trial.
Adjudication: Facts to December 9, 1991
The following background facts were not contraverted and are set forth in the DCYS social study and in the CT Page 3771 treatment plans. On August 3, 1990, this thirty-one year old mother was adjudged an incompetent person by the Bridgeport Probate Court and committed to Fairfield Hills Hospital. At that time, her sister, Sharon Unwin, was appointed conservatrix of the person and/or the estate and served in this capacity at time of trial. The respondent mother has had a long history of severe mental illness beginning at age fifteen, being first hospitalized at Hall-Brooke Hospital in Westport, and later from 1982 to 1988 at Fairfield Hills Hospital. In September, 1988, she lived in a group home in Bridgeport where she began drinking alcohol to excess and using drugs. Her behavior was out of control. She defecated and urinated on the floor, smeared feces in her room, and was having sex with a number of men at this rooming house. It was this bizarre behavior which resulted in her second commitment to Fairfield Hills Hospital in July of 1990, where she has remained to the present time. She has spent approximately one-half of her life in mental institutions.
Her child was born at Danbury Hospital on March 31, 1991. Because she was a patient at Fairfield Hills Hospital, DCYS placed the infant in a foster home on April 4, 1991, where he has remained. He is developmentally delayed and has been receiving therapy biweekly at a licensed facility known as DATAHR; he is classified as a "special needs" child.
The second ground DCYS alleged for termination is that after the uncared adjudication on June 12, 1991, the respondent mother "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child." Section 17a-112(b)(2) of the Connecticut General Statutes. This statutory ground now requires that a parent rehabilitate within a "reasonable time" and "the age and needs of the child" must be considered since these words were added as amendments to this statute in 1983. Formerly, there was no time set for the parent to regain a responsible position in the child's life. In re Rayna M., 13 Conn. App. 23,32. The general effect of this change was to reduce the time for the parent to reform his behavior and for the court to also consider the needs and the age of the child. He has a vital interest to develop his life constructively within a reasonable time and is equal to giving a parent a reasonable time to rehabilitate. What is a reasonable time is a question of fact to be governed by the circumstances in each case and the age and needs of the child is another question of fact for the court to decide in this particular case. In re Shannon S., 19 Conn. 20 (1989, and In re Luis C., 210 Conn. 157 (1989). CT Page 3772
At trial, Ms. Tarsa testified that the respondent participated in a total of eight supervised visits with her child. The child has no recognition that she is his mother. The mother's interaction and attention span is limited to a few minutes; therefore, the scheduled one hour visits never lasted more than forty-five minutes.
Ms. Finley, the psychologist at Fairfield Hills Hospital, testified that her mental illness is chronic schizophrenia, which is based on observing her behavior on a daily basis over the past year. She could not estimate a date when she could be discharged. From the hospital record, she knew that the respondent had been previously hospitalized at Fairfield Hills from 1982 to 1988, or approximately six years. Based on her past history and her present behavior, the prognosis for recovery from this illness is extremely poor. In her opinion, she will not be able to care for this child on a daily basis in the foreseeable future, and she may never be able to parent this child. The opinion of a licensed psychologist may be afforded great weight in a termination proceeding. In re Nicolina T., 9 Conn. App. 598,605.
From the testimony of Ms. Finley and Ms. Tarsa, the Court finds the evidence to be clear and convincing that this mother will not be able to achieve the degree of personal rehabilitation from her mental illness within a reasonable time in order to assume a responsible position in this child's life. The court has also considered the special needs and age of the child in reaching this conclusion. Therefore, DCYS has met their burden of proof in this second ground of failure to rehabilitate.
In the third ground, DCYS has alleged that this child has been denied by an act or acts of omission, the care, guidance and control necessary for his physical, educational, moral or emotional well-being. In the fourth ground, the allegation is that there is no parent-child relationship. The same evidence may establish either or both of these two grounds.
The Court will consider the fourth ground first, that there is no on-going parent-child relationship as defined in the statute. It is "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." CT Page 3773
While mental illness, in itself, is not a basis for termination of parental rights, it may be properly considered when determining whether a parent's mental illness renders such a person in capable or unable to provide the child with necessary care. In re David E., 4 Conn. App. 653; In re Theresa S., supra, 18. It is significant in determining whether a person has the ability to parent a child. In re Nicolina T., supra, 607.
Based on the testimony of both the DCYS social worker, Ms. Tarsa, and of Dr. Finley, the clinical psychologist, the Court finds by clear and convincing evidence that the respondent was not able to care for the child since birth and will not in the foreseeable future because of her chronic mental illness; therefore, DCYS has proven the fourth ground of the petition by clear and convincing evidence.
The same evidence through which DCYS has established this fourth ground may be considered in proving the third ground that the child was denied by an act or acts of omission, the care, guidance, or control necessary for his physical, educational, moral or emotional well-being. The Court finds that this same evidence was clear and convincing that no on-going parent-child relationship has existed between Gene and his mother; therefore, DCYS also has prevailed on this third ground.
DCYS has failed to prove the first ground of abandonment because this mother lacked the mental capacity to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of her child as required by the statutory definition. She had a sister appointed as her conservator because of her mental illness before the child was born. She never could have formed an intent to abandon him totally and permanently as the common law concept previously required.
Even though DCYS has proven all of these three grounds, the Court must further find by clear and convincing evidence that it is in the child's best interest to terminate the parental rights of this mother after considering the six factors in section 17a-112(d) of the Connecticut General Statutes. The Court's findings are as follows:
1. DCYS prepared two treatment plans, but because of her mental illness she was unable to comply with either of them.
2. Because she was adjudged an incompetent by the CT Page 3774 Bridgeport Probate Court, there were no orders issued to her by this Court.
3. The child has never known her as his thirty-one year old mother and has no emotional ties to her. Since birth, he has been completely cared for by his foster parents. They have provided for all his physical and emotional needs and he is now bonded to them as his "psychological parents." The social worker believes that they want to adopt Gene as soon as he is free for adoption.
4. Gene was born on March 31, 1991.
5. Based on both the testimony of the social worker and the licensed psychologist, this mother does not have the ability or capacity to care for this child now or in the foreseeable future nor may she ever because of this long term illness. She has been confined to mental institutions for over ten years. Her most recent admission to Fairfield Hills Hospital was in July, 1990, and she remains there to the present time with no prognosis of when she will be released.
6. No agency or person, nor did economic circumstances prevent this respondent from developing a meaningful relationship with her child.
After considering these six factors, the evidence is clear and convincing that termination of her parental rights is in the best interests of this child.
Waiver of One Year Requirement:
Section 17a-112(c) of the Connecticut General Statutes provides that "[t]he court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child." This record supports by clear and convincing proof that this one year waiver is proper and necessary in this case in order to promote the best interests of the child. It is the public policy of this state to protect and provide every neglected or uncared for child a safe environment. Section 17a-101 of the Connecticut General Statutes.
Disposition:
The testimony of Dr. Finley, the Fairfield Hills psychologist assigned to her case, diagnosed the respondent as a chronic schizophrenic which was unrefuted by any other CT Page 3775 medical expert or other testimony. In her opinion, this patient is not able or capable of caring for a child now nor in the foreseeable future. She will remain a patient at this hospital indefinitely. According to their records, she was previously confined there from 1982 to 1988 for this same mental illness.
The social study and testimony of Ms. Joan Tarsa, the DCYS social worker, confirmed that the respondent has been a patient in mental hospitals for almost one-half of her life. From this past record and her present confinement, she will be required to have on-going medical and psychiatric supervision. The mother's own testimony was disconnected, rambling and unresponsive. It was obvious that she is suffering from mental illness. She has not held a job for many years and is not likely to be employed in the future.
"Termination has been consistently recognized as being in the best interest of the child when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care." In re Nicolina T., supra, 804.
All of these factors, taken as a whole, the evidence is clear and convincing to support the conclusion that termination of the respondent's parental rights would serve the best interests of the child. In re Theresa S., supra,29-30.
Therefore, it is ordered that the parental rights of the respondent mother be and are hereby terminated. It is further ordered that the Commissioner of DCYS be appointed statutory parent pursuant to section 17-a-112(1) of the Connecticut General Statutes for the purpose of placing the child in adoption as soon as possible. DCYS is ordered to submit a report, in writing, to this Court within ninety (90) days from the date of this judgment, and annually thereafter, until such adoption is finalized.
PETRONI, JUDGE