[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
NATURE OF PROCEEDINGS;
On August 13, 1991, the Department of Children and Youth Services ("DCYS") filed a petition to terminate the parental rights of Nancy B. and Fausto Sr., the biological parents of Fausto L., who was born on April 4, 1986. It alleges all four statutory grounds for termination pursuant to Connecticut General Statutes, Section 17a-112(b), all of which existed for not less than one year.
The trial was held on February 25, 1992, and May 11, 1992. DCYS called four witnesses, MS. Claire Sansone, A DCYS Social Worker; Dr. David Mantell, PH.D.; MS. Barbara Lynch, the child's first grade teacher; and Mrs. Amelia Grajales, the child's foster mother. The following exhibits were entered into evidence by DCYS without objection:
Exhibit A -psychological report of Dr. David Mantell, dated November 30, 1991; and Exhibit B-1 through B-7 — seven DCYS treatment plans; and Exhibit C — a letter dated October 24, 1991 from Man Liu, M.S., family and Children's Aid Inc.; and Exhibit D- social study by MS. Sansone filed with this Court August 13, 1991 with this petition; and Exhibit E — a picture of the child.
The putative father was served by publication, but never appeared at this hearing nor at any of the prior proceedings, therefore, he was defaulted. He has had no contact whatsoever with DCYS
DCYS is required to prove one of these four grounds by clear and convincing evidence in order to prevail. Proof must be sufficient to convince the Court beyond an average certainty that the respondent's rights as a parent should be terminated. In re Juvenile Appeal (84-BC), 194 Conn. 254, 255; In re Theresa S., 196 Conn. 18, 24.
A petition for the termination of parental rights consists of two phases, the adjudicatory phase and the dispositional phase. Connecticut Practice Book, Sec. 1042, 1044, 1059. There is no requirement that the adjudicatory phase and the dispositional phase should be held in different hearings, and a unified hearing is permissible. In re Juvenile Appeal (84-AB),192 Conn. 254, 259 (1984). There is a different purpose for each of the two phases. In the adjudicatory phase, the CT Page 6119 Court receives evidence to determine the validity of the allegations made in the petition, and the Court is limited in receiving evidence to the events that occurred prior to the filing of the petition, in this case, August 13, 1991. The dispositional phase takes into account the best interest of the child, and the Court is permitted the hear evidence and take into consideration facts and events to the date of trial.
BACKGROUND FACTS:
The following background facts were undisputed. On April 15, 1988, the mother signed voluntary placement with DCYS and the child was placed in a foster home in Old Saybrook, Connecticut, until August 12, 1988, approximately four months. The attorney for the respondent mother correctly pointed out at trial that her voluntary placement of Fausto on April 15, 1988, when faced with a chaotic living arrangement, an the child at risk, she made the right decision. This kind of temporary placement should be encouraged by DCYS without prejudicing her right to regain custody of the child.
At that time, the goal of DCYS was to return the child to her by July 15, 1988, expectations for visitation and counseling were established. The mother was given unlimited visitation. The agency explained that if the expectations were not met, a neglect petition would be filed.
In September 1988, Dr. Ralph Welsh PH.D., found no parent-child relationship and no commitment on her part to do what was needed in order to reunify with her son. She never visited the child even once during those first four months. She testified of not having a car and no one would take her to Old Saybrook, which is about fifty-five miles from her home. There was limited public bus transportation available, but she failed to visit him even once during this four month period. Her reasons were unpersuasive and unacceptable to the Court, and were based on satisfying her own needs and not the child's.
On November 7, 1988, the child was adjudicated uncared for and committed to DCYS for eighteen months, and extended twice, on May 7, 1990, and September 3, 1991, for this same eighteen month period.
ADJUDICATION — Facts from April 15, 1988 to August 13, 1991.
I. ABANDONMENT:
DCYS alleges that the child had "been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as CT Page 6120 to the welfare . . ." of the children. (Emphasis added.) Section 17-43(b)(1) of the Connecticut General Statutes. Abandonment focuses on the parent's conduct and it is a question of fact for the trial court. In re Rayna M., 13 Conn. App. 23; In re Juvenile Appeal, 183 Conn. 11, 14. "Attempts to achieve contact with a contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child," as referred to in the statute. In re Shavoughn K., 13 Conn. App. 91,97, cert. denied 207 Conn. 805; In re Migdalia M., 6 Conn. App. 194, 20809. "Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." In re Juvenile Appeal, 183 Conn. 11.
The statutory standard is not whether the parent has shown some interest in the child. Common sense dictates that a parent's obligation toward his or her children go further than minimal interest. . . The commonly understood general obligations of parenthood entails these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the medical care; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . ." In re Rayna M., supra.
From the testimony of Ms. Sansome and the social study filed with this petition, (State's Exhibit D) and from the mother's own admission, the Court finds that she had no contact whatsoever with DCYS or the child From May 1989, to September 12, 1990, approximately sixteen months. From May 1988, to September 12, 1990, or approximately twenty-eight months she failed to provide DCYS with her address or how she could be reached. During this entire period she called DCYS five times and visited the child twice at the DCYS office. On each occasion Ms. Sansome told her she must receive counseling, attend parenting classes and increase visitations. When she finally appeared unexpectedly at the DCYS office on September 12, 1990, she advised them of her many problems. She had married in June 1988, to a Yugoslav citizen, but then separated in November 1989. Shortly thereafter she moved into an apartment with an eighteen year old unemployed high school drop-out, a Carnezz Terry, and on October 24, 1990, gave birth to their son, out of wedlock. On January 29, 1991, she again appeared at the DCYS office advising them she had broken off with this boyfriend and wanted to regain her son. She held chosen a life-style to meet her own needs, with a minimal concern for Fausto. CT Page 6121
Her attorney urges the Court to give more time for supervised visitation with professional assistance in order to develop the parent-child relationship. He believes that since she is not addicted to drugs or alcohol nor has ever abused Fausto, she would be able to rehabilitate and he claims that DCYS failed to provide her with enough services. But she is responsible for her conduct. She ignored the child and the agency for long periods of time, not a few months as stated. While poverty and lack of family support made her life extremely difficult, she must be accountable for this lack of concern. The respondent father showed no concern whatsoever, having had no contact with the child or DCYS during the entire proceeding. Except for her evaluation by Ralph Welsh in September, 1988, the mother never visited him nor had any contact with DCYS. During the period, the child was about three years old and would need a parent to care for him on a daily basis. Her conduct towards him was far below the statutory standards of having reasonable concern for his welfare. The Court finds that her efforts were minimal at best, and he did nothing for the child. For a period, of at least sixteen months, neither parent met any of the five general obligations of parenthood as required in In re Rayna, supra. She demonstrated little interest in him from April 15, 1988, to the date of this petition, August 13, 1991. The Court finds that the evidence was clear and convincing to prove the first ground of statutory abandonment as to both respondents. In fact, it was overwhelming.
II. FAILURE TO REHABILITATE:
The findings of fact on the grounds of abandonment apply to failure to personally rehabilitate, and to the other grounds alleged. In re Shannon S., 19 Conn. 20 (1989). This second ground requires a parent to reform their lives within one year after an adjucation of neglect or uncared for and assume a responsible position in the child's life, taking into account the age and needs of this particular special needs child. (Sec. 17a-112(b)(2)C.G.S.) Fausto was found uncared for by this Court on November 8, 1988, and from that date to January 29, 1991, the mother did not complete parenting classes nor attend counseling as required in all six treatment plans that she signed with DCYS. After she broke off with her boyfriend in January, 1991, she went to the DCYS office expressing a desire to continue with counseling. Her participation in the program at Family and Children's Aid, Inc. was sporadic, and she made limited progress (State's Exhibit C). By this time, the child hardly knew who she was according to Dr. David Mantell's psychological report (State's Exhibit A.). He reported and also testified that the mother was incapable of assuming a responsible role in the child's life, and he saw no indication that she had a genuine interest in him or could it be developed CT Page 6122 in the future. "Psychological testimony is rightly accorded great weight in termination proceedings. "In re Nicolina T.,9 Conn. 598. The child also had special needs in speech, language, and he was developmentally delayed. The foster mother enrolled him in a special "Ripple Program" to address these needs in 1989, and then in a Head Start program which he completed in June, 1991.
The Court finds that the respondents have failed to personally rehabilitate for more than a year, and considering the age and special needs of this child, they would not be able to assume a responsible position in his life within a reasonable time. DCYS has proven this second ground by clear and convincing evidence.
Upon adjudication of this ground, the Court is required to make findings relative to the six factors outlined in Sec. 17a112(d) C.G.S. In re Shavoughn K., 13 Conn. App. 91 (1987).
1. DCYS, offered the mother reasonable services such as parenting classes, counseling and foster care. She did not make herself available for these services to facilitate a reunification with her son.
2. The Court ordered evaluations of the mother and were prepared by Dr. Ralph Walsh PH.D., and Dr. David Mantell PH.D. But her reluctance or instability to avail herself of the services recommended and provided by DCYS, in the seven treatment plans prevented her from being reunited with her son.
3. According to the social worker and Dr. Mantell, the child does not recognize her as his mother. He has never known his father nor was he ever been a resource for him. The child has bonded to with his present foster parents with whom he has lived since August 12, 1988, and considers them his parents.
4. The child was born on April 4, 1986, and is now over six years old.
5. The mother has visited with the child approximately five times during the past three years, and the father has never even acknowledged him. She has not made any serious efforts to adjust her circumstances or conduct to have the child returned to her. She had another child out of wedlock on October 24, 1990, has lived with her boyfriend's mother, was unemployed and receiving state welfare to support herself and this child.
6. Neither DCYS nor any other person prevented her from ever having a meaningful relationship with her child. Her own lack of interest in the child, and not economic circumstances CT Page 6123 was the primary cause.
III ACTS OF OMISSION AND COMMISSION AND IV. NO ONGOING
PARENT-CHILD RELATIONSHIP
DCYS relies on the same evidence to prove the third and fourth grounds, parental acts of commission or omission, and no ongoing parent-child relationship. The Court finds that the evidence is clear and convincing to prove both grounds (Sec. 17-112(b)(3) and (4) C.G.S.). Any further delay with hope that a parent-child relationship would develop by having the mother enter more counseling or parenting classes would be contrary to Fausto's best interests. Dr. David Mantell's testimony and his psychological report (State's Exhibit A) concluded as follows:
"There is no evidence of an ongoing parent and child relationship. There is no evidence that the child has many memories of either a positive or a negative nature that pertain to the biological mother or the biological family members. There is no evidence from this examination that the mother has a genuine interest in this child, that she might relate to him satisfactorily, or that a program of personal rehabilitation could enhance the level of her interest of this child. Her personality profile indicates that she is a person with substantial difficulties, and no readiness to have these addresses in a rehabilitive program".
DISPOSITION:- Facts from August 13, 1991 to May 11, 1992, the last date of trial.
Even though DCYS has met the burden of proof on all four statutory grounds, the Court must also find by clear and convincing evidence that termination of parental rights would be in the best interest of this child. In re Juvenile Appeal,189 Conn. 66, 79 (1987). The testimony of Dr. David Mantell was a probative and compelling finding that the child has no memories of his mother. And considering the age and needs of the child, he recommended termination of parental rights based on the best interest of the child. The child has lived almost four years with his present foster parents, the Grajales family, and she testified that he only knows them as his parents and family. She and her husband are ready to adopt him, as they have three other older sons.
Before coming to live with them, Fausto had serious developmental delays, but after four years, he has overcome them by attending special rehabilitative programs. His kindergarten teacher, Ms. Barbara Lynch, testified that he was CT Page 6124 a good student, all his grades were satisfactory, that he is never tardy, and he is always dressed appropriately. He gets along well with other students and loves school. His foster mother, Mrs. Amelia Grajales, testified that she and others in their family all love Fausto and that he loves them in return. They are the only family he knows.
After considering all of the facts, the evidence clear and convincing that termination of the respondents parental rights are in the best interest of this child. Fausto deserves the security of a family such as the Grajales, who are ready and willing to adopt him now. He has the right to a stable a permanent home.
Therefore, it is hereby ordered that the parental rights of the respondent mother and father are hereby terminated. It is further ordered that the Commissioner of DCYS be appointed statutory parent pursuant to Sec. 17a-112(i) so that this child can be placed for adoption as soon as possible, and submit a report to the Court within ninety days from this judgment and annually thereafter until the adoption is finalized.
Entered at Danbury, Connecticut, this 16th day of June, 1992.
Petroni, J.