MEMORANDUM OF DECISION
This case presents a petition for the termination of parental rights of Sheila S. and Neroy H. to their child, Paul Luke, now age two. Paul Luke was placed with the Department of Children and Families (hereinafter DCF) at his birth (April 22, 1995) due to mother's psychiatric problems. On September 21, 1995, Paul Luke was adjudicated an uncared-for child and committed to the care CT Page 3732 and custody of DCF. On June 3, 1997, DCF filed a petition for termination of parental rights of the biological parents.
The court finds that the mother and father were served with the petition for termination and have appeared through court-appointed attorneys. The court has jurisdiction in this matter; there is no pending action affecting the custody of Paul Luke in any other court.
At trial, DCF proceeded against both parents on two grounds. First, DCF claims that the parents have abandoned the child. General Statutes § 17a-112(c)(3)(A). Secondly, the petitioner alleges that this child was previously adjudicated uncared-for and that the parents have failed to rehabilitate. General Statutes § 17a-112(c)(3(B). At trial mother's attorney appeared, but mother did not appear. Father appeared and contested the allegations against him.
FACTS
The court, having read the verified petition, the social studies, and the various documents entered into evidence, and having heard the testimony of various witnesses and the evaluator, Dr. David A. Krulee, a psychiatrist, as well as having taken judicial notice of the prior record in this court, makes the following factual findings and reasonable inferences supported by these facts.
Mother, predating the birth of Paul Luke, had serious psychiatric problems. At Paul Luke's birth, he was removed by DCF on the recommendation of a psychiatrist (Dr. Sperling) that mother did not have the ability to care for the child properly. Dr. Sperling reported that Paul Luke's life would be threatened by leaving the child in her custody. Mother continues to have mental health issues and, at the filing of the termination petition, was still not able to take on the responsibilities of being a parent. Mother has on a few occasions visited Paul Luke, however the status report dated August 6, 1997 (Exhibit 4) shows that the visits have been mostly sporadic. Exhibit 1, a social study dated May 20, 1995, shows that mother does not always take her medications as recommended by her physician. Even if DCF's recommendations in the court-approved expectations had been followed, mother's mental state under medication is fragile, and she is severely handicapped, so that she can hardly play a major parental role in Paul Luke's life. CT Page 3733
Turning to father, the criminal records report (Exhibit 5) shows that he was arrested on April 18, 1995 and also on May 18, 1995, for assault and probation violations. The charges were disposed of on October 2, 1995, by a sentence of one year in jail. A short time after an early release, father was arrested on February 16, 1996, on burglary charges. This arrest led to the imposition of a one-year sentence on March 6, 1996. Father was released on February 18, 1997. He was arrested again on June 16, 1997, for burglary, larceny, criminal mischief and interfering with arrest. He is currently being held on these charges.
Based on the above criminal record, father has been incarcerated through most of his son's life, except, assuming his making bond, for a few brief periods. Dr. Krulee testified that father had told him that he had had multiple episodes of incarceration, and has spent no more that eighteen months out of detention or corrections since the age of ten.
Father also has a substance abuse problem, involving cocaine, alcohol, marijuana, and occasional heroin sniffing. Dr. Krulee concluded that father was dependent on cocaine and in need of chemical dependency treatment. Father also stated that he has been arrested on several occasions on domestic violence charges.
Father signed expectations on September 21, 1995, and these were approved by the court. He was, among other things, expected to visit Paul Luke as often as DCF permitted, participate in parenting, substance abuse, and domestic violence counseling, not engage in substance abuse, maintain adequate income and housing, and have no further involvement with the criminal justice system. DCF social worker Michael Clark testified that father did not meet any of these expectations.
Regarding visitation, father saw Paul Luke in the hospital at birth and once in New Britain while Paul Luke was in foster care. Between February, 1997, and his re-arrest in June, 1997, father canceled one visit and was unable to arrange another due to communication problems with DCF. He visited the foster home once and saw Paul Luke, but did not actually visit with him.[2] The court (Keller, J.) ruled in September, 1997, that based on this poor record, DCF was excused from arranging further visitation, especially as it would mean transporting Paul Luke to a prison for it visit and this was not in the child's best interest. It is clear that although father claims to have always wanted visits with the child, he showed little initiative, was incarcerated, CT Page 3734 and then canceled one visit that had been arranged. He has not convinced the court that he had more than a nominal interest in visitation at the time of the filing of the petition in June, 1997.
Father admits that he did not (except for brief attendance at AA and NA meetings in prison) complete any counseling program, whether it be for parenting skills, substance abuse, or domestic violence. He has not been substance free. At the time of the termination petition and today as well, father's income and housing situations are uncertain. He has continued his involvement with the criminal justice system. Father has been invited to DCF treatment plan and administrative case review sessions, but has not attended.[3] Although father knew the location of the foster care, he did not send Christmas or birthday gifts to Paul Luke or send him any notes or letters.
The court also heard testimony on the placement of Paul Luke. After coming into the care of DCF immediately after birth, Paul Luke was placed with a first foster family. In December, 1996, he was removed from that foster home because DCF was concerned that he had a high lead blood level. From December 20, 1996 to the present, he has resided at another foster home. The DCF social worker testified that this placement has been very successful. Since December, 1997, Paul Luke has been in excellent health, and eats and sleeps well. He has bonded to his foster mother and calls her "mommy." This is a stable environment and DCF is looking to have the foster family adopt Paul Luke.
ADJUDICATION[4]
The court finds by clear and convincing evidence existing at the date of trial that DCF must prevail against mother on the ground of General Statutes § 17a-112(c)(3)(B), failure to rehabilitate. While mother is trying to cope with her mental illness, it is also true that her child has been found uncared-for in a prior proceeding, and at the time of the termination petition, she had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, she could assume a responsible position in his life. "Personal rehabilitation" means that the mother has restored herself "to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194,504 A.2d 532 (1986). That simply has not happened here. CT Page 3735
The court must consider this statutory ground notwithstanding mother's mental handicaps. "Termination has been consistently recognized in the best interests of the child when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care." In re Nicolina T.,9 Conn. App. 598, 605, 520 A.2d 639. In the case of In re: JuvenileAppeal, (83-BC), 189 Conn. 66, 78-79, 454 A.2d 1262 (1983) the court indicated that "the legislature may properly strike the balance at the point where mental or physical deficiency, even though not involving fault, is as great as to render the parent incapable of measuring up to the child's needs as those are delineated in [Section § 17a-112]."
With regard to father, the court finds by clear and convincing evidence existing at the date of trial that two alleged statutory grounds exist, that of abandonment and failure to rehabilitate. Here the child has been abandoned by father in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. General Statutes § 17a-112(c)(3)(A). This ground focuses on the parent's conduct. Abandonment occurs on failure to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. This is a factual matter of evaluating the parent's expressed concern for the child, and the minimum duties of parenthood, such as attempts at visitation, contact with the child through telephone calls, the sending of cards and gifts, and the provision of financial support. In re Reyna M.,13 Conn. App. 23, 36-37, 534 A.2d 897 (1987); In re Luke G.,40 Conn. Sup. 316, 323, 323 A.2d 1054 (1985). As shown, father here has failed to show the interest required by a parent in the welfare of his child. While he may express love for Paul Luke, he did not visit him on any regular basis, provide cards shown, father here has failed to show the interest required by a parent in the welfare of his child. While he may express love for Paul Luke, he did not visit him on any regular basis, provide cards or gifts or attempt to keep up with Paul's welfare through telephone calls or letters to his foster homes. He did not ask for photographs or attend administrative case reviews held by DCF. This constitutes abandonment for the purposes of a petition to terminate parental rights.
Father has been incarcerated for most of Paul Luke's life. Many obligations of parenthood may be pursued even from prison, however. "[Father's] imprisonment hardly complicates the issue. The incarceration of a parent does not alone constitute CT Page 3736 abandonment. In re Juvenile Appeal (Docket No. 10155),187 Conn. 431, 443, 446 A.2d 808 (1982); In re Juvenile Appeal (84-6)2 Conn. App. 705, 711, 483 A.2d 1101 (1984). . . . The restrictions on movement that are inherent to incarceration, however, do not excuse a failure to make use of available, albeit limited, resources for communication with one's children. In re JuvenileAppeal (Docket No. 10155), supra." In re Shannon S.,41 Conn. Sup. 145, 153, 562 A.2d 79 (1989).
There is also clear and convincing evidence that father had failed to rehabilitate himself at the time of the filing of the petition to terminate his rights. General Statutes § 17a-112
(c)(3)(B). The failure to meet expectations is evidence of a failure to rehabilitate. In re Shavoughn K., 13 Conn. App. 91,100, 534 A.2d 1243 (1987). Here, as indicated, the evidence is clear that father did not in any way meet the expectations set for him. The court concludes that "the level of rehabilitation [father] achieved . . . falls short of that which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his] child's life." In reJuvenile Appeal (84-3), 112 Conn. App. 463, 479 (1984).
The court also finds that the facts warranting adjudication have existed for more than one year prior to the filing of the petition.
REQUIRED FINDINGS
The court makes the following factual findings required by General Statutes § 17a-112(e):
1. Appropriate and timely services were provided to mother and father by DCF including counseling, transportation assistance, and visitation coordination.
2. The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the parents and child given the situation and circumstances.
3. DCF, with the approval of the court, set reasonable and realistic expectations in order to reunify the family. Mother tried to comply, but is still limited by her mental handicaps from fully meeting expectations. Father made no compliance with his expectations. CT Page 3737
4. The child has strong emotional ties with the current foster family and little ties to the biological parents.
5. The child is two, almost three, years of age. Especially after his first foster home failed, Paul Luke requires stability of placement and continuity of care. The attorney for the child recommends termination. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276
(1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992).
6. The parents have not made realistic and sustained efforts to conform their conduct to even minimally acceptable parental standards. Giving them additional time would not likely bring their performance as parents within acceptable standards to make it in the best interests of the child to be reunited. In re Luis C.,210 Conn. 157 (1989); In re Juvenile appeal, 183 Conn. 11, 15 (1981).
7. While the parents means were limited, economic factors did not prevent regular, continuing contact with either Paul Luke or the foster placements. Paul Luke and his parents lived in reasonable geography proximity. DCF encouraged contact. No unreasonable conduct by DCF occurred. Neither parent showed more than sporadic interest, because of mother's illness and father's incarceration.
DISPOSITION
The court finds, based upon the testimony and evidence presented, that it would be in the child's best interest to terminate the parental rights of mother and father at this time. This finding is made after considering Paul Luke's sense of time, his need for a secure and permanent environment, the relationship Paul Luke has with his current foster parents, and in the totality of circumstances that the termination of parental rights is in his best interest.
ORDER
Based upon the foregoing findings, the court concludes that it is in the best interest of the child to terminate the parental rights of mother and father. It is accordingly, ORDERED that the CT Page 3738 Parental Rights of Sheila S. and Neroy H. are hereby terminated. The Commissioner of DCF is hereby appointed the statutory parent. A permanency plan shall be submitted within 90 days. A review Plan for Terminated Child shall be filed in accordance with Federal Law.
HENRY S. COHN, JUDGE CHILD PROTECTION SESSION
[2] The foster mother, on instructions from DCF, did not permit a full visit without DCF prior approval.
[3] Father could not attend some of these because he was incarcerated, although at times DCF has arranged to allow incarcerated persons to attend an ACR, held at prison. Also, one time he did not receive notice because his address had changed.
[4] No finding is necessary pursuant to General Statutes §17a-112(c)(1), because the court (Teller, J.) on April 22, 1997, had found that efforts to re-unify were not appropriate. See General Statutes 17a-110(b).